AUSTIN COMPANY *v.* SMITH COMPANY; and *vice versa.*

1. It is not error for a trial judge to direct a verdict for the plaintiff, where there is no conflict in the evidence introduced, and it, with all reasonable deductions therefrom, demands a verdict for the plaintiff.

(*a*) Under a contract between a supply company and another company, the latter was made the agent of the former for the sale of certain concrete mixing machines in a given territory, at a named per cent. discount on the selling price. The machines in issue were placed with the agent, to be paid for at the selling price agreed upon, less 15 per cent. Before the sale of the machines by the agent, the supply company failed, and sold part of its assets, including the machines in question, to the original manufacturer, from which the supply company had originally purchased. The agent company received from the supply company, after the failure and sale, the paper given for the payment of the machines, no payment having been made by the agent thereon. Correspondence between the sales agent and the vendee of the supply company showed that the agent held the machines on consignment for the benefit of the vendee, the plaintiff in this suit, and the former offered to return the machines to the latter. The agent later sold the machines, and, on demand for them made on the agent and the latter's failure to deliver, the plaintiff brought his suit in trover to recover them, and on the trial elected to take a money verdict. The agent company denied that the title to the machines was in the plaintiff, but claimed it was in the defendant. *Held,* that the trial judge did not err in directing a verdict for the plaintiff against the defendant for the admitted value of the machines sued for.

2. It appears from the contract, which was executed in the State of Illinois, that the selling corporation was an Illinois corporation and the purchasing corporation was a Wisconsin corporation, and that the latter did not purchase the franchise of the former, or all of its assets, and the latter did not assume the debts and liabilities of the former, but the former corporation continued to do business in its own name until its failure some time after the sale. *Held:* (*a*) The transaction between the selling corporation and the purchasing corporation was one of sale, and not of merger. (*b*) Where there has been a bona fide sale of the property of one corporation to another, the vendee is not responsible for the existing debts of the vendor, unless the vendee expressly assumes such debts and liabilities. (*c*) The court erred in directing a verdict for the defendant against the plaintiff.

AUGUST 16, 1912. REHEARING DENIED SEPTEMBER 27, 1912.

Trover, etc. Before Judge Pendleton. Fulton superior court. March 17, 1911.

*John L. Hopkins & Sons,* for Austin Company.
*Westmoreland Brothers,* contra.

HILL, J. The T. L. Smith Company, a non-resident corporation, filed a trover suit against the W. E. Austin Company, for the recovery of two machines known as "Smith concrete mixers," and of the alleged value of $1,805. Demand for the machines and refusal to deliver were alleged. The plaintiff elected to take a money verdict. The defendant denied the plaintiff's right to recover the machines, and set up a cross-action against the plaintiff, on an account alleged to be due by the Contractors Supply and Equipment Company, the predecessor in title of the T. L. Smith Company, for commissions claimed to be due on "concrete mixers" sold by the Contractors Supply and Equipment Company in the exclusive territory named in the contract between the W. E. Austin Company and the Contractors Supply and Equipment Company, said sales running through a certain period of time and amounting to $6,113.75, besides interest. An itemized statement of said account was attached to the petition. It was alleged in the cross-action that the T. L. Smith Company (hereinafter called the plaintiff) had purchased the Contractors Supply and Equipment Company, an Illinois corporation, and was liable to the W. E. Austin Company (hereinafter called the defendant) on said account. No charge of fraud was alleged as to the purchase of the assets of the Contractors Supply and Equipment Company, but the petition seeking to fix the liability on the plaintiff alleged that "the plaintiff, in taking over the assets, contracts, property, liabilities, etc., of the Contractors Supply and Equipment Company, and having, in its own interest and to serve its own ends, caused said company to cease doing business, became, was, and is liable in its place and stead to this defendant for said commissions and said sums." It was also alleged that the plaintiff "took over the business and assets of said Contractors Supply and Equipment Company. . . The contract then of force, and which had been entered into with the supply company, was and became binding and obligatory in all of its terms and conditions upon the Smith Company and this defendant." At the conclusion of the evidence, each side moved the court to direct a ver-

dict,—the plaintiff asking for a verdict against the defendant for the value of the property sued for, with interest; and the defendant moving for a verdict disallowing plaintiff's claim and allowing the defendant to recover the amount of the commissions as contained in the account attached to the cross-action, with interest. The court directed a verdict in favor of the plaintiff for the value of the property sued for, with interest to date; and also directed a verdict for the defendant for the amount sued for in the cross-action, with interest to date, and directed that the amount found in favor of the plaintiff be deducted from the amount found in favor of the defendant, leaving the amount due the defendant by the plaintiff, $4,917.68; and judgments were entered accordingly. To this direction each party excepted.

1. We will consider both cases together, as they embrace the same transactions. Was the direction of the verdict for the plaintiff for the value of the property sued for right, under the facts of this case? We think it was. There was no conflict in the evidence, and the verdict was demanded. The record shows that the defendant entered into a contract, dated June 19, 1907, with the Contractors Supply and Equipment Company (hereafter called the supply company), of Chicago, Ill., by the terms of which the defendant was to become the sole agent of the supply company for the sale of certain concrete mixers within certain territory named in the contract. For the sale of the machines the defendant was to be allowed a named per cent. as discount on the selling price agreed upon. In pursuance of this contract, the defendant from time to time did order from the supply company mixing machines, and sold them. One order was for the two machines in controversy. Pending the sale of these machines by the defendant, the supply company went into liquidation, and sold, on February 11, 1908, a part of its assets to the plaintiff, including the two machines in question, which were originally manufactured by the plaintiff and sold by it to the supply company. After the sale of the machines by the supply company back to the plaintiff, the defendant company took up the paper given for them to the supply company. After the trade between the plaintiff and the supply company, the correspondence with reference to the machines in the possession of the defendant was between the plaintiff and the defendant. The defendant in its answer

averred, among other things, that "It was not expected under the course of dealing between defendant and the supply company that the defendant should pay for said machinery until it had sold the same, but at the request and instance of an officer of said company, defendant, as related above, did make out and deliver its two notes. These notes were renewed once or twice, defendant in the meantime attempting to dispose of the property, which it failed to do. In the meantime the T. L. Smith Company had taken over the contract of the Supply & Equipment Company, and had assumed ownership of the notes; by mutual agreement the two notes in question were cancelled and returned to this defendant. With this transaction the plaintiff made out and forwarded a form of consignment contract, to which this defendant objected, and which it declined to sign. It was then willing under proper conditions, and if plaintiff demanded it, to treat the goods as being upon consignment, when in fact they were not, and in turn made out a counter contract of consignment, which was forwarded to the plaintiff, and which it in writing declined to accept. No contract of consignment was, therefore, ever entered into between the plaintiff and this defendant."

In addition to other evidence offered by the plaintiff was a letter addressed to the plaintiff by the defendant under date of October 19th, 1908, as follows: "We, as previously stated, are perfectly willing to carry the two concrete mixers referred to on consignment account here for you, although they have cost us a great deal more money now for warehouse charges and insurance than we will ever get out of them; or we will accept your proposition to return the mixers to you to Milwaukee, and if you desire us to do so we will, as per our proposition made you recently, prepay the freight on them to Milwaukee. If you desire to have them shipped back rather than carry them here on consignment account, advise us, and we will ship them immediately." The letters of the defendant to the plaintiff recognize the title to the machinery to be in the plaintiff, one of these referring to the mixers as being "here on consignment, for your account." And, "If you desire to have them shipped back rather than carry them here on consignment account, advise us, and we will ship them immediately." Pending negotiations as to a written form of assignment (about which the parties could not agree) of the mixers to the defendant, the latter

sold them; and failing to deliver them to the plaintiff on demand, the trover suit was brought.

The one question, therefore, is, was the title to the property in the plaintiff or in the defendant at the time of the sale by the latter. We think when the supply company failed and sold part of its assets back to the plaintiff, including the machines in controversy, and the defendant then took up the paper given to the supply company for the property, and recognized by its letters to the plaintiff that the property was held on consignment, that was a novation of the original contract, which vested the title to the machines in the plaintiff, and made the defendant liable to the plaintiff as the owner of the property in controversy. The contract executed between the defendant and the supply company made the defendant the sales agent of the latter, and did not vest the title to the machines in the defendant. The evidence and all the reasonable deductions therefrom demanded the verdict, and therefore the court did not err in directing a verdict for the plaintiff for the value of the property sued for.

2. Whether the direction of the verdict for the defendant against the plaintiff for $4,917.68 was error depends on whether the transaction between the Contractors Supply and Equipment Company and the plaintiff, on February 11, 1908, was a merger of the two companies, or a sale of one to the other. We think the latter is true, and that the transaction was one of sale, and a partial sale at that. The record shows that the plaintiff did not purchase all of the assets of the supply company. It did not purchase the franchise of the corporation. It did not assume the debts and liabilities of the selling company. It was not the successor of the supply company, and the latter did not go out of business at the time of the sale. There is nothing to show that the plaintiff had any knowledge of any existing contract between the defendant and the supply company, nor that there was any fraud in the transaction with intent to injure the creditors of the selling company. The supply company continued to do business in its own name, and was to collect its own accounts and pay off and discharge its own liabilities, and had a given time within which to do this. In the case of *Hawkins* v. *Central Ry. Co.*, 119 *Ga.* 159 (46 S. E. 82), this court held, that "where there has been a lawful and absolute sale of a railroad, the grantee is not responsible for

the existing debts of the grantor." And see *Culberson* v. *Ala. Con. Co.,* 127 *Ga.* 599 (4), 609 (56 S. E. 765, 9 L. R. A. (N. S.) 411, 9 Ann. Cas. 407) ; *Southern Bell Telephone &c. Co.* v. *Jacoway,* 131 *Ga.* 483, 485 (62 S. E. 640) ; *Atlanta &c. R. Co.* v. *Atlantic Coast Line R. Co.,* 138 *Ga.* 353 (75 S. E. 468). But in the *Hawkins* case, supra, it was also ruled that "where there has been no sale, but a merger, and no provision made for the payment of the debts of the absorbed company, the consolidated corporation is liable for the debts of the former, at least to the extent of the value of the property received." In *Atlantic & Birmingham Ry. Co.* v. *Johnson,* 127 *Ga.* 392 (2), 395 (56 S. E. 482, 11 L. R. A. (N. S.) 1119), it was ruled: "Where two corporations effect a consolidation and one of them goes entirely out of existence, and no arrangements are made respecting the liabilities, the resulting corporation will, as a general rule, be entitled to all the property and answerable for all the liabilities of the corporation thus absorbed." It does not appear in this case that there was any merger or consolidation of the supply company with the plaintiff company, or that the former had gone entirely out of business, but, on the contrary, the transaction was simply a contract of sale by the supply company of a portion of its assets to the plaintiff company, and the latter did not agree to be bound for the debts or obligations of the former company. The elements of merger were therefore lacking, and those of sale were present. We rule, therefore, that there was no merger in this transaction, but a sale; and as the vendee did not assume the debts and liabilities of the vendor, it was not bound therefor, and the court erred in directing a verdict for the defendant.

*Judgment affirmed on the bill of exceptions of Austin Company, and reversed on the bill of exceptions of Smith Company. All the Justices concur, except Lumpkin, J., disqualified.*