## GEORGE W. DAVIS v. OTTO L. HEMMING ET ALS.

Third Judicial District, Bridgeport, October Term, 1924.

WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

The property of a corporation, except net profits or actual surplus, must be devoted to the satisfaction of its debts before any portion is distributed to stockholders, and under the so-called trust-fund theory, creditors who are prejudiced by a violation of this rule may follow the property into the hands of the distributees (stockholders) and subject it to the payment of their claims.

Creditors are not, however, entitled to this remedy as against a purchaser of the corporate property unless the transfer embraces all the elements of a fraudulent conveyance as defined by § 6132 of the General Statutes, including the purchaser's knowledge of and participation in the fraud of the vendor.

While the plaintiff held an unsatisfied judgment against the E Company, the W Company purchased all its property and assets for their fair value paying therefor directly to the shareholders of the E Company who, at the same time, transferred their stock certificates to the W Company.   The plaintiff then brought this action in the nature of a creditor's bill against the W Company and the shareholders of the E Company, against all of whom the trial court rendered judgment, although it found that there was no actual intent to defraud the plaintiff on the part of the W Company.   Held that, in view of the finding, the judgment against the W Company was erroneous.

Certain of the defendant stockholders of the E Company appealed, on the ground that the trial court improperly admitted in evidence the agreement of sale, against their objection that it contained unreasonably restrictive covenants as to the future employment of the president of the E Company which invalidated the entire transfer.   Held that the trial court's ruling was correct, since a claim of that nature, necessarily involving an examination into all the surrounding circumstances to determine the reasonableness of the covenants, should have been raised on the pleadings and not by mere objection to evidence; and that these stockholders, having retained the proceeds of the sale, were now in no position to attack its validity.

These defendants also claimed that the plaintiff's failure to make them parties in his original action against the E Company now precluded him from obtaining judgment against them in the present case.   Held that this claim was without merit, especially

Davis *v.* Hemming.

in view of the trial court's finding that these defendants had notice
of the original action and employed counsel to conduct the defense.
For the protection of the W Company, $25,000 of the purchase price
was deposited in escrow for the satisfaction of such claims as might
subsequently be presented against the E Company, of which,
at the time of trial, only one for $3,000 was known to be in exist-
ence in addition to the plaintiff's judgment for $7,500.   The
judgment provided that if the defendant stockholders of the E
Company failed to discharge the plaintiff's claim, it should be paid
out of the escrow fund. *Held* that, while the W Company was
entitled in equity to have this fund undepleted to its loss, the judg-
ment afforded adequate protection to it under all the circumstances.

Argued November 6th, 1924—decided January 30th, 1925.

ACTION to recover from the stockholders and trans-
feree of the assets of the Eagle Pocket Knife Company
the amount of a judgment previously obtained by the
plaintiff against that Company, brought to and tried
by the Superior Court in New Haven County, *Brown,
J.;* facts found and judgment rendered for the plaintiff,
and appeal by the defendants. *No error on the appeal of
Otto L. Hemming and Frederick O. Hemming; error in
part on the appeal of the Winchester Repeating Arms
Company.*

The finding discloses the following facts.   During the
period between the early spring of 1917 and the early
part of 1919, the Eagle Pocket Knife Company, a
Connecticut corporation located in New Haven, herein-
after called the Knife Company, was conducting a
profitable business manufacturing and selling metal
knives.   During that period the plaintiff acted as a
selling agent for the Knife Company, and, as a result,
the Knife Company became indebted to the plaintiff
who, on July 12th, 1921, obtained a judgment for
services against the Knife Company in the amount of
$7,588.14 damages, and $79 costs, in an action brought
to the Superior Court in New Haven County.   The
shares of capital stock of the company at that time con-
sisted of five thousand shares of the par value of

$125,000, and the company was solvent. The Winchester Repeating Arms Company, hereinafter called the Arms Company, in the spring of 1919, negotiated for the purchase of the business of the Knife Company. The defendant Otto L. Hemming, president and controlling stockholder of the Knife Company, was authorized to negotiate the sale, and a contract of sale was entered into. Subsequently the stock certificates representing all the outstanding stock of the Knife Company were indorsed by the stockholders, and a bill of sale of all the property and assets to the Arms Company executed. The bill of sale and stock certificates were delivered to the Arms Company, and in consideration thereof the Arms Company, on May 19th, 1919, paid $125,000 by its checks in favor of the individual stockholders, being the par value of the stock owned by such stockholders. The Arms Company also paid, in consideration of the contract and transfer, $25,000 primarily for the defendants Beck and Otto L. Hemming. By the contract the defendants Otto L. Hemming, Frederick O. Hemming, Sigmund F. Beck and John Hugo warranted the Arms Company against all claims against the Knife Company not listed in a schedule of claims, known as Schedule B, which contains the names of about fifty-seven creditors to whom the Knife Company owed $13,297.78, and among them the name of the plaintiff did not appear. There were also the following liabilities of the Knife Company set forth therein: notes payable $20,000, accrued payroll $1,540, accrued taxes $281.63, Federal income tax $1,928.08, accrued interest $666.66, all of which the Arms Company paid.

The existence of the plaintiff's claim was known by the negotiating officers of the Arms Company and by the defendants, the Hemmings, Hugo and Beck, but they were all assured by Otto L. Hemming, who alone knew of the details of the transaction, that the claim

had no merit.   Otto L. Hemming, Frederick O. Hemming, Hugo and Beck, as a part of the sale, jointly and severally covenanted, warranted and agreed that no other obligations of the Knife Company existed than those stated in Schedule B, and the claim of the plaintiff was not therein stated.   The $25,000 referred to in the agreement of sale as the part of the consideration of sale to be paid to Otto L. Hemming for the defendants Otto L. Hemming and Beck, was not paid to Otto L. Hemming and Beck, but was used by the Arms Company, by agreement, as follows: $25,909.90 was used in the purchase of Arms Company preferred stock to the amount of $25,800, and $90.10 was paid to the defendant Otto L. Hemming instead of a purchase of United States Liberty Bonds, as provided in the pledge arrangement contained in agreement of sale; and Otto L. Hemming, the Arms Company, and the Union and New Haven Trust Company, executed the deposit agreement set forth below.   Otto L. Hemming has never paid Beck any part of the $90.10.

The pledge agreement in escrow between Otto L. Hemming, the Arms Company, and the Union and New Haven Trust Company, on May 19th, 1919, provided for a certain deposit to be held in escrow as collateral security for the performance of several agreements in the contract of sale as follows:   The parties to this contract agree that the depositary shall hold in escrow the said $25,800 of stock upon the following conditions: (1) That this contract shall terminate on May 19th, 1924, unless sooner terminated by agreement.   (2) That such stock shall be held in pledge as collateral security for the performance of the several agreements of all the sellers in the contract entered into on May 19th, 1919.   (4) Otto L. Hemming shall keep the stock held in escrow free and clear from all liens, attachments, and encumbrances whatsoever during the term

of this contract.    (5) Dividends on the stock held in escrow shall be payable to Otto L. Hemming during the term of this contract.    (6) Claims for the security of which the stock has been delivered in escrow, shall be allowed and paid for during the term of this contract upon proof and presentation thereof.    (7) Upon the termination of this agreement, the stock remaining in escrow shall be delivered to Otto L. Hemming.

By the terms of the pledge of the Arms Company's preferred stock, Otto L. Hemming was to receive from the Union and New Haven Trust Company, the entire income from the $25,000 fund.

By agreement between themselves alone, the stockholders of the Knife Company agreed that Otto L. Hemming and Sigmund F. Beck would, out of this $25,000, take care of the Davis claim and save Hugo harmless, and that Otto L. Hemming and Beck would share such balance of the $25,000 as remained.    This agreement was supported by a valuable consideration.

By another agreement among the stockholders a fund of $3,050.61 was created, and deposited in the names of Otto L. Hemming and Beck in the Second National Bank, to be used to pay the Davis claim.    Otto L. Hemming wrongfully withdrew $3,000 of this fund and used it for his own purposes.    There is now a balance of $102.32 of this account in that bank.

Other facts found appear in the opinion.

From the judgment set forth below, the defendants Otto L. and Frederick O. Hemming and the Winchester Repeating Arms Company appealed.    The judgment is as follows: "Whereupon it is adjudged and decreed:

"1. That the plaintiff recover of the defendants, other than the Union and New Haven Trust Company and Frederick O. Hemming, the sum of $8,577.71, together with his costs taxed at . . . . dollars and . . . . cents, with interest from July 12, 1923.

"2. That the defendants Otto L. Hemming and Sigmund F. Beck execute and deliver to the plaintiff, in partial satisfaction of this judgment, an order upon the Second National Bank for the balance of their account at said bank standing in their joint names.

"3. That the defendant Otto L. Hemming shall out of his own property or estate, exclusive of any property or fund explicitly mentioned in this decree, pay to the plaintiff the sum of $3,534, with legal interest to date of payment from July 12, 1923, in partial satisfaction of this judgment, and that the defendants Otto L. Hemming, John Hugo and Sigmund F. Beck, shall pay the balance due on this judgment.

"4. Should said Otto L. Hemming fail to pay said $3,534 or any part thereof, then the entire balance due on this judgment so remaining unpaid shall be paid by Otto L. Hemming, John Hugo and Sigmund F. Beck out of their own property or estate, exclusive of any property or fund explicitly mentioned in this decree.

"5. Should the defendants Otto L. Hemming, John Hugo and Sigmund F. Beck fail in whole or in part to pay this judgment to the plaintiff as hereinbefore provided, then the defendant the Winchester Repeating Arms Company, shall pay any sum so remaining unpaid, and shall thereupon, after making any such payment, be entitled to collect any sum so paid by it, the Winchester Repeating Arms Company, from said defendants Otto L. Hemming, Frederick O. Hemming, John Hugo and Sigmund F. Beck, or at its election on or before May 19, 1924, to be reimbursed by the Union and New Haven Trust Company, Trustee, from the securities held by the defendant the Union and New Haven Trust Company under escrow agreement dated September 15, 1919, for any amount so paid by it, the

Winchester Repeating Arms Company, in satisfaction or partial satisfaction of this judgment.

"6. Should the defendants Otto L. Hemming, Sigmund F. Beck and John Hugo, the Eagle Pocket Knife Company and the Winchester Repeating Arms Company fail in whole or in part to pay this judgment to the plaintiff and execution against said defendants shall be returned unsatisfied, then the defendant the Union and New Haven Trust Company, shall satisfy this judgment or any part thereof remaining unsatisfied, from the funds and property in its hands under the escrow agreement dated September 15, 1919.

"7. Upon the expiration of the five-year period provided for by paragraph thirteen of agreement of sale dated May 19, 1919, to wit: On May 19, 1924, after all the rights of the defendant the Winchester Repeating Arms Company, in and to the securities held by defendant the Union and New Haven Trust Company in relation to this plaintiff's claim have been satisfied in accordance with the provisions of this judgment, and after all rights of the defendant the Winchester Repeating Arms Company in and to the said securities with relation to any other claims under said agreements of May 19, 1919, and September 15, 1919, hereinbefore referred to, have been fully satisfied, then the defendants Hugo and Frederick O. Hemming shall be reimbursed out of the residue of said funds in the hands of said the Union and New Haven Trust Company for any sums paid by them or either of them under this judgment exclusive of any payments made by them or either of them under paragraphs two and three of this judgment above stated.

"8. It is declared that each of the defendants Otto L. Hemming and Sigmund F. Beck, is the owner of one-half of the fund in the hands of the Union and New Haven Trust Company, subject to the obligations with

respect to it created by said contracts of May 19, 1919, and September 15, 1919, and fixed with respect to it by this judgment.

"9. Any defendant or defendants, other than the defendant the Winchester Repeating Arms Company, and the defendant Otto L. Hemming, who shall have paid the whole or any part of the sums directed to be paid by the second and third paragraphs of this judgment, shall be reimbursed for the amount or amounts so paid, out of the defendant Otto L. Hemming's share of the residue of said funds in the hands of the defendant the Union and New Haven Trust Company, which shall remain after the foregoing provisions in this judgment with regard to it have been satisfied and should said Hemming's share of said residue prove insufficient therefor any such defendant or defendants shall be entitled to collect from the defendant Otto L. Hemming any amount so paid.

"10. That there be an accounting by the defendant Otto L. Hemming of the $90.10 paid by the defendant the Winchester Repeating Arms Company, to him on September 15, 1919, with interest thereon, and also of the interest collected by him upon said funds in the hands of the defendant the Union and New Haven Trust Company, and that a State Referee is hereby appointed a committee to take the account.

"11. It is adjudged that the defendant Sigmund F. Beck is entitled to one-half of the net amount ascertained upon said accounting and that the defendant Otto L. Hemming shall pay such amount to the defendant Sigmund F. Beck, and that should the defendant Otto L. Hemming fail to pay said amount so found to be due to the defendant Sigmund F. Beck, on or before the time fixed for the distribution of the funds in the hands of the Union and New Haven Trust Company, then the amount shall be paid to the defendant Sigmund F.

Beck out of the defendant Otto L. Hemming's share of the residue of said fund.

"12. It is further adjudged that if any defendant pays any sum upon this judgment which, under the terms of this judgment, it is the duty of another to pay, he shall be subrogated to the rights of the plaintiff, or of any other party to whom such payment may be made, against such other defendant or defendants up to the amount of such payment.

"13. It is further adjudged that if the defendant the Union and New Haven Trust Company, shall be called upon to pay any sums to any of the parties of this action in accordance with the terms of this judgment, said defendant, the Union and New Haven Trust Company, shall sell sufficient of the securities held by it under the escrow agreement, to pay the amount so ordered to be paid by the Union and New Haven Trust Company by the terms of this judgment, and if the defendant the Union and New Haven Trust Company shall make such sale and payment or payments, then said defendant the Union and New Haven Trust Company shall be discharged from all liability to any of the parties to this action for the property so sold and sums so paid, pursuant to the terms of this judgment."

*Frederick H. Wiggin*, for the appellant (defendant The Winchester Repeating Arms Company).

*Charles S. Hamilton*, for the appellants (defendants Otto L. and Frederick O. Hemming).

*Harrison Hewitt*, with whom was *Harrison T. Sheldon*, for appellees (defendants John Hugo and Sigmund F. Beck).

*Harold E. Drew*, for the appellee (plaintiff).

CURTIS, J. The judgment entered in this action was appealed from by three of the defendants, the Arms Company and Otto L. and Frederick O. Hemming. We will consider first the appeal by the Arms Company. This appeal has two objects. It appeals from any judgment rendered against the Arms Company for the amount of the Davis claim, and from the provisions of the judgment entered in its behalf upon its cross-complaint. Was judgment properly rendered, on the facts found, against it, among other defendants, for the amount of the plaintiff's claim?

The finding discloses that in May, 1919, the Arms Company entered into negotiations for the purchase of the business of the Knife Company, and, about May 19th, it consummated an agreement with the Knife Company, its officers and main stockholders, who controlled all the stock, whereby it became the owner of the business, the assets, the property and all the shares of the capital stock of the Knife Company, and took the same into its possession, upon payment of ample valuable consideration therefor, to wit, cash and agreements to pay liabilities, in all equivalent to $192,452.91. The cash was paid in individual checks, directly to each stockholder. In this method of payment the Knife Company, its officers and stockholders acquiesced. The court found, in paragraph fifty-one of the finding, that "by the sale of the business, assets, and stock of the Eagle Pocket Knife Company to the Winchester Repeating Arms Company, and by the distribution of the purchase price thereof as hereinbefore stated, the defendant Knife Company was stripped of all its property and assets in fraud upon the plaintiff as a creditor of said Knife Company, and since before and after the time when execution was issued on the judgment rendered in favor of the plaintiff against the Knife Company, said Company has had nothing to be applied in

satisfaction of such execution or of the judgment on which it was issued." The court also found, paragraph sixty of the finding, that "there was no actual fraudulent intent, or actual intent to defraud plaintiff, Davis, or anyone else, on the part of said Arms Company or any of its officers or agents in any of the transactions mentioned in this finding, or in any part of any such transactions."

In view of the finding in paragraph fifty-one as recited above, the Arms Company infers that, where "fraud upon the plaintiff" is spoken of therein, it implies that there was fraud on the part of the Arms Company as alleged in the fifth paragraph of the complaint as amended.

At this point in the discussion, it is proper to consider the claim of the plaintiff that the transaction of sale itself imposes a liability on the Arms Company, the purchaser. The complaint apparently claims that the vendee, in such a transaction with a corporation, receives the property and assets of the vendor impressed with a trust in the nature of a continuing lien in favor of creditors of the vendor corporation.

There are statements in cases to the effect that the assets of a corporation are a trust fund for the benefit of corporation creditors, which seem to convey the idea that upon that fund a lien exists which continues against bona fide purchasers of such assets for a valuable consideration. The law is otherwise.

In *Fogg* v. *Blair*, 133 U. S. 534, 541, 10 Sup. Ct. 338, the court says: "We do not question the general doctrine [as to property of a corporation being a trust fund for the payment of debts]. . . . That doctrine only means that the property must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders; it does not mean that the property is so affected by the in-

debtedness of the company that it cannot be sold, transferred, or mortgaged to bona fide purchasers for a valuable consideration, except subject to the liability of being appropriated to pay that indebtedness. Such a doctrine has no existence."

·  In *Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S. 371, 375, 14 Sup. Ct. 127, the court says: "A party may deal with a corporation in respect to its property in the same manner as with an individual owner, and with no greater danger of being held to have received into his possession property burdened with a trust or lien. . . . As between itself and its creditors the corporation is simply a debtor, and does not hold its property in trust, or subject to a lien in their favor, in any other sense than does an individual debtor."

Cook on Corporations (8th Ed., 1923) Vol. 1, § 9, says: "The Supreme Court of the United States [in 1893] passed again upon this theory of the capital stock being a trust fund, and decided that, if there be any trust at all, it is rather a trust in administration after possession by the court than a trust attaching to the property itself." In *Catlin* v. *Eagle Bank* (1826), 6 Conn. 233, this court announced as the law of this State the principles laid down in the foregoing cases of the Supreme Court of the United States. And in later cases we have attached a lien in favor of creditors to the property of a corporation, when appropriated by stockholders so as to be beyond the reach of creditors. *Crandall* v. *Lincoln*, 52 Conn. 72, 95; *Buck* v. *Ross*, 68 Conn. 29, 31, 35 Atl. 763. See also General Statutes, § 3423.

In *Barber* v. *Morgan*, 89 Conn. 583, 94 Atl. 984, there is a dictum, on page 589, that seems to say that property of a corporation is still "a trust fund for creditors" after sale unless proper provision was made for the payment of the debts of the disposing company.

This dictum cannot be held to have changed our law as announced in *Catlin* v. *Eagle Bank, supra,* and cases referred to by us.

It follows that the bona fide purchaser of the property of a corporation for a valuable consideration takes it free from any trust or lien in favor of creditors, created by the so-called "trust-fund doctrine."

In Volume 30, Amer. & Eng. Anno. Cases, p. 1044, an extended note demonstrates the following proposition: "In accord with the holding in the reported case [*W. E. Austin Co.* v. *T. L. Smith Co.,* 138 Ga. 651, 75 S. E. 1048], it is held without dissent that a sale by one corporation to another of part or all of its assets, in good faith and for a valuable consideration, does not of itself impose on the buying corporation any liability for the debts of seller."

Does the fact that the Arms Company acquired all the stock, property and assets of the Knife Company create a different result? It does not. In *Whiting* v. *Malden & Melrose R. Co.,* 202 Mass. 298, 304, 88 N. E. 907, the court says: "It is very plain that, in the absence of a statutory provision on the subject, the acquisition of all the stock, property, and assets of a corporation, by an individual or by another corporation, does not of itself make the new holder liable to pay the debts of the corporation. A mere purchase of such capital stock and assets is a taking of a title, which leaves unsecured creditors with no claim against the purchaser." See also 8 Fletcher, Cyc. Corporations, § 5027 to § 5035 inclusive.

We are not dealing in this suit with the consolidation of similar corporations under General Statutes, § 3520 to § 3524 inclusive.

From the foregoing discussion of the law relating to a sale by a corporation of all its assets to another corporation, it appears that nothing short of actual fraud will

vitiate such a transfer, that is, a fraudulent sale under General Statutes, § 6132. Under this section, it is a primary essential to the establishment of a conveyance as fraudulent, that the grantee must have knowledge of and participate in the fraud of the vendor. *Partelo* v. *Harris*, 26 Conn. 480; *Hamilton* v. *Staples*, 34 Conn. 316, 324; *Trumbull* v. *Hewitt*, 62 Conn. 448, 26 Atl. 350.

The law as set forth above, applied to the subordinate facts found, discloses that it could not be legally found that the vendee in this transaction, to wit, the Arms Company, had knowledge of and participated in such fraud, if any, that the Knife Company perpetrated upon the plaintiff in the sale of its assets. There remains, therefore, no basis for a finding, as in paragraph fifty-one, that the Arms Company in the transaction of purchase from the Knife Company was guilty of any fraud, actual or constructive, against the plaintiff; and the finding must be amended by striking out such finding of fraud in paragraph fifty-one in so far as it relates to the Arms Company. For the foregoing reasons the rendering of a judgment against the Arms Company, in favor of the plaintiff, was erroneous.

There remains for consideration the judgment rendered in so far as it relates to the several cross-complaints and to the other defendants. That a corporation cannot make a distribution of its assets, except only net profits or actual surplus, to its stockholders, and thereby deprive its creditors of its property, which is primarily applicable to the payment of their claims, and thus give the stockholders an unincumbered title to the assets received by them, is the established law in this State. The property so distributed may be followed and subjected to the payment of the claims of creditors. *Crandall* v. *Lincoln*, 52 Conn. 73, 95; *Buck* v. *Ross*, 68 Conn. 29, 31, 35 Atl. 763; *Lewisohn* v. *Stoddard*, 78 Conn. 575, 63 Atl. 621. General Statutes, § 3423,

states and supplements this rule.  This principle of law is not contested in this case.

In the instant case the Knife Company, its officers and stockholders, made a sale, upon ample consideration, of all the property of the corporation, and distributed the purchase price, the equivalent of the assets, among the stockholders, who then had knowledge that the plaintiff claimed that the Knife Company was indebted to him.  Such a distribution of the assets of a corporation among stockholders is unlawful as to any creditor injured thereby, and he may proceed, by an appropriate suit, against such stockholders to enforce the payment of his claim against the corporation.

The defendant stockholders Otto L. and Frederick O. Hemming, appellants herein, do not controvert the right of creditors to proceed against stockholders who hold the assets of a company under the conditions stated above.  On the contrary, they attack the validity of the sale underlying the situation as an agreement contrary to public policy, and void in that it contains restrictive stipulations as to the future employment of Otto L. Hemming.  There does not appear in the pleadings of these appellants any such attack upon the transaction of sale underlying this suit.  They contented themselves with an objection to the admission in evidence of the agreement made and set forth in Exhibit A, because it contained an unlawful restrictive agreement.

We said, in *Samuel Stores, Inc.* v. *Abrams*, 94 Conn. 248, 252, 108 Atl. 541, with reference to an agreement claimed to be invalid as in restraint of trade, that "the reasonableness of a restriction in view of all the circumstances and the interests of the public and the parties, is the test of its validity."  The restrictive agreement here claimed was not illegal on its face.

It is apparent that under those conditions a claimed restriction must be attacked in the pleadings in order

that the party relying on the agreement may have notice and be prepared to prove all relevant circumstances involved in the determination of its reasonableness. A trial court cannot ordinarily be called upon to determine the validity of a restrictive agreement in a ruling upon the admission of evidence. "Where a contract is not illegal on its face, and there is no suggestion of illegality in the answer to an action thereon, the defense of illegality will not prevail. . . . Further, a contract will not be declared illegal unless it is unlawful on its face, where the surrounding circumstances are not before the court." 13 Corpus Juris, p. 507, § 455. The court properly overruled the objection made to the admission of the agreement.

There are other obvious reasons that could be urged in support of the ruling; as that this suit is not one to enforce the agreement, but is one attacking the distribution of the assets of a corporation among stockholders to the injury of a creditor, and that it is not open to Otto L. Hemming to affirm the sale and hold the proceeds, and at the same time to disaffirm it as illegal in an action by a creditor of a corporation to recover against him as a stockholder fraudulently withholding assets of the corporation from creditors.

The Hemmings further urge that the plaintiff creditor cannot pursue the assets of the Knife Company in their hands, because they were not made parties in his action against the Knife Company. If there were any force in this contention, the finding, paragraph forty-seven, obviates it. This finding is to the effect that the Hemmings and other stockholders were informed of the pendency of the plaintiff's action, and employed counsel and defended and contested the action in court. These claims of the Hemmings do not commend themselves to us, for they are apparently made to bar this creditor from recovering

his judgment indebtedness from the assets which, as to him, they wrongfully hold. All reasons of appeal of the Hemmings not herein considered are overruled as unsustainable or immaterial.

The Arms Company in its appeal claims that the judgment rendered did not properly protect it upon the facts found under its cross-complaint. In Exhibit A, paragraph nine, appears this provision: "The said Otto L. Hemming and Frederick O. Hemming, John Hugo and Sigmund F. Beck, jointly and severally, covenant, warrant and agree as follows: First, that no other obligations of the Eagle Pocket Knife Company, Incorporated, exist, except those stated in Schedule B hereof. . . . Third, to pay any and all taxes or assessments hereafter made, ascertained, or determined, in respect to said corporation or said business or any of the said property for any period of time prior and up to the date hereof. [May 19th, 1919.]" In paragraph thirteen, this provision appears: "Said Otto L. Hemming agrees to use a part of the purchase money to be received by him as provided in paragraph 5 hereof, to buy bonds of the United States of America, approved by the buyer [the Arms Company], and of the market value of $25,000 and deposit said bonds with some bank or trust company to be named by the buyer [the Arms Company] and to be held in pledge as collateral security for the performance of the several agreements of the sellers in this contract contained, for the period of five years from the date hereof; provided, however, that if the said business shall be abandoned within the said period of five years, then in that event the bonds shall be delivered to said Otto L. Hemming. Said Otto L. Hemming is to receive the interest on said bonds from time to time, less the expenses, if any, connected with said pledge."

The parties later mutually agreed to substitute for the United States bonds, a similar amount of par value of the first preferred stock of the Arms Company, and this was done, and the deposit was duly made with the defendant the Union and New Haven Trust Company, as per escrow agreement. This escrow agreement, as we have seen, provides, in substance, that the Trust Company undertakes to hold in escrow the Arms Company stock in pledge as collateral security for the performance of the several agreements of all the sellers in the contract of sale. In paragraph four of this agreement Hemming undertook to "keep the stock so held in escrow free and clear from all liens, attachments, and encumbrances whatsoever during the term of this contract."

In the bill of sale (Exhibit B), the sellers, the Hemmings, Hugo, Beck and the Knife Company, entered into this agreement: "The sellers hereby warrant that they have the title to and right to sell all the property named in said inventory or used in said cutlery business. They also . . . agree that the liabilities of the Eagle Pocket Knife Company, Incorporated, do not exceed the liabilities stated in . . . Schedule B, and if any other liability is discovered or exists that they will pay the same and hold the Winchester Repeating Arms Company harmless in respect thereto."

During the negotiations for the sale to the Arms Company, Otto L. Hemming claimed that he and Beck were the owners of certain patents which were used by the Knife Company. The other stockholders claimed that the company owned them. Otto L. Hemming and Beck, in view of this controversy, agreed with the other stockholders that, in consideration of the consent of the other stockholders that $25,000 of the purchase price in the sale should belong to Beck and Otto L. Hemming, they would use the $25,000

to make the deposit in escrow required by the contract, and that they would use the fund to pay any claims against the Knife Company, which the Arms Company did not assume. Otto L. Hemming and Beck agreed that each of them should own one half of this fund, subject to the obligations of the escrow fund and such claims. The defendants Otto L. Hemming, Hugo and Beck agreed that of the consideration paid by the Arms Company, $3,050, belonging in part to each of them, should be deposited in the Second National Bank, to be first used for the purpose of paying such claim as the plaintiff had. On July 24th, 1920, Otto L. Hemming withdrew $3,000 from this account, and wrongfully appropriated it to his own use. The balance of the account amounted at the time of the trial of the cause to about $102.32, and is drawing interest. This account was a joint account in the name of Otto L. Hemming and Beck.

The primary duty, by the various agreements, rests upon Otto L. Hemming and Beck to pay the plaintiff's judgment against the Knife Company, first by the application of the $3,050 which was placed in their control, but which Otto L. Hemming appropriated to his own use, and second, from their own funds, to be restored to them out of the pledge fund in the hands of the Trust Company, when the escrow agreement terminates. This obligation on Otto L. Hemming and Beck the judgment seeks to carry out, but it is united, however, with an erroneous provision as to the liability of the Arms Company.

The Arms Company claims that the law as laid down in *Lathrop* v. *Atwood*, 21 Conn. 117, is applicable to their situation. With our decision that the Arms Company is under no obligation to pay the plaintiff's judgment, the analogy ends. The plaintiff in *Lathrop* v. *Atwood* was a retiring partner, who was obligated to

Davis *v.* Hemming.

pay the debts of his firm and was suing a new incoming partner who had agreed "to pay all debts from said firm and to save said Lathrop harmless." A judgment for Lathrop would cancel the contract and leave Atwood free from any obligations in regard to the debts, under our law at that time. That would not be the effect of a judgment for the Arms Company for debts not paid by the sellers.

The Arms Company was entitled to have the pledge fund undepleted to its loss. By the finding the possible claim of the United States for taxes of about $3,000, and the plaintiff's claim for the amount of his judgment, are all the known liabilities that may deplete the pledge fund of $25,000. Under these conditions we cannot say, as a matter of law, that equity requires that the Arms Company should be further protected than in the judgment rendered. The judgment justly settles the equities between the other defendants.

The judgment rendered must be modified substantially as follows as to the different paragraphs thereof:

1. Paragraph one should read as follows: That the plaintiff recover of the defendants other than the Winchester Repeating Arms Company, the Union and New Haven Trust Company and Frederick O. Hemming, in the manner hereinafter stated, the sum of $8,477.71, together with his costs taxed at

dollars and       cents, with interest from July 12, 1923.

2. Paragraphs two, three, four, seven, eight, ten, eleven, twelve and thirteen unchanged.

3. Paragraph five omitted.

4. Paragraphs six and nine unchanged, except that all reference to the Winchester Repeating Arms Company is stricken out.

There is no error on the appeal of Otto L. and Frederick O. Hemming.

There is error in part on appeal of the Winchester Repeating Arms Company. The judgment is set aside and the cause remanded for entry of judgment in conformity with this opinion.

In this opinion the other judges concurred, except Kellogg, J., who concurred in the result, but died before the opinion was written.