358 F.2d 587
 AUTOMATIC CANTEEN COMPANY OF AMERICA, Petitioner-Appellant,
v.
Irving L. WHARTON, Trustee of Continental Vending Machine Corp., Respondent-Appellee, and
James Talcott, Inc., Appellee.
In the Matter of CONTINENTAL VENDING MACHINE CORP., Debtor.
 No. 88.
 Docket 29676.
 United States Court of Appeals Second Circuit.
 Argued October 26, 1965.
 Decided March 29, 1966.
 
 Alvin M. Stein, New York City (Jordan Newman, and Parker, Chapin & Flattau, New York City, on the brief), for petitioner-appellant.
 William M. Kahn, New York City (John P. Campbell, Ernest D. Stein, Edwin M. Larkin, Norman Biener, David W. Kahn, and Curtis, Mallet-Prevost, Colt & Mosle, New York City, on the brief), for respondent-appellee, Irving L. Wharton, Trustee.
 Julius J. Abeson, New York City (J. Jacob Hahn, and Hahn, Hessen, Margolis & Ryan, New York City, on the brief), for appellee, James Talcott, Inc.
 Before LUMBARD, Chief Judge, SMITH, Circuit Judge, and LEVET, District Judge.*
 SMITH, Circuit Judge:
 
 
 1
 Automatic Canteen appeals from an order of the United States District Court for the Eastern District of New York, Mishler, District Judge, dismissing its petition which sought to have a trust imposed on the proceeds of the sale of a vending machine route, sold by appellee, Trustee of the debtor, Continental Vending, and requesting payment of a claim of $55,900, plus interest, from the proceeds. We reverse and remand for further proceedings.
 
 
 2
 On October 3, 1961, appellant's assignor sold the route to Continental Lake Vendors Corp. (Lake), a wholly owned subsidiary of the debtor incorporated in Indiana. $111,700 of the price was evidenced by a series of unsecured promissory notes due monthly. The parent guaranteed these notes. On July 17, 1962, Lake's board of directors and representatives of Continental met to consider the dissolution of Lake into Continental, the parent, and the board resolved to dissolve on September 30, 1962. On September 30 Lake was insolvent, with assets of $946,926.70 and liabilities of $1,154,373.49; the debt to appellant's assignor had been reduced to about $75,000. Continental's consolidated balance sheet filed with the Securities and Exchange Commission May 17, 1963 showed assets as of September 30, 1962 of $33,321,609, and liabilities of $37,411,959, including some mortgage debt.
 
 
 3
 Lake did not complete the statutory procedure for dissolution, Indiana Statutes § 25-241, and Lake's operations continued with the same personnel and at the same address. Lake filed an information return with the Internal Revenue Service stating that Lake had adopted a plan of dissolution; and the name of its bank account, but not the face of its checks, was altered to reflect a change from subsidiary to division. Continental assumed the liabilities of Lake.
 
 
 4
 On May 1, 1963, with Continental in receivership, the note then due was not paid, and on May 22 appellant, who by then had been assigned the notes, accellerated the debt, then totaling $55,900. On July 12 the court approved an involuntary petition under Chapter X against the debtor. At the sale of the route petitioner advanced its claim that the route was an asset of the subsidiary, not of the debtor, and was told Lake had become a division. Neither appellant nor its assignor had notice of the resolution of July 17, 1962, to dissolve Lake, or of the information return filed by Lake. The court preserved all rights to the route in the proceeds of the sale of the properties of which the route was part.
 
 
 5
 There can be no doubt that Lake did not properly dissolve and that the debtor did not acquire the route by the dissolution of its subsidiary. Appellant argues from this that Lake did not transfer the route at all. This contention lacks merit. The route was intangible personal property, largely contract rights, and could be transferred orally. The fact that the same personnel continued the business at the same address has no bearing on the question of delivery in the case of a sale by a wholly owned subsidiary to a parent, since it is altogether natural for the parent to continue the business as before. The intent of Lake to transfer the route is manifest from the resolution, the information return, and the change of bank account.
 
 
 6
 It is appellant's theory that a trust arose in its favor upon the transfer of the route from Lake to Continental, superior to the Trustee's "strongarm" power, § 70(c) of the Bankruptcy Act, 11 U.S.C. 110(c). Appellant suggests that the trust relationship was created because of a violation of the Indiana Bulk Sales Act, Ind.Statutes § 33-201, § 33-203, or because of a fraudlent conveyance, or because of an illegal dividend.
 
 
 7
 A fraudulent conveyance or violation of the bulk sales law apparently does not lead to a trust relationship between the transferee and creditors of the transferor, for Indiana terms the transfer "voidable" but not "void." Rothschild v. State, 200 Ind. 501, 165 N.E. 60 (1929); Van Horn v. Lindsay, 103 Ind. App. 420, 8 N.E.2d 409 (1937). See also In re Central Metallic Casket Co., 273 F.2d 506 (7 Cir. 1960); In re Maxwell Sheraton, Inc., 46 F.Supp. 680 (S.D.N.Y. 1942), aff'd sub nom. City of New York v. Johnson, 137 F.2d 163 (2 Cir. 1943). Since such transfers are voidable, not void, appellant not having brought suit before the Trustee's lien arose, cannot recover on this theory. Leasure v. Leasure, 86 Ind.App. 499, 157 N.E. 11, modified 158 N.E. 925 (1927).[1] It is therefore unnecessary to decide whether the transfer was fraudulent.
 
 
 8
 While there is little recent authority on the question, it had long been held in Indiana that the assets of a corporation are not a trust fund for the creditors, so that the directors would be required to treat all creditors equally. Levering v. Bimel, 146 Ind. 545, 45 N.E. 775 (1897). However, "the right of an insolvent corporation to distribute its assets in the form of dividends or otherwise to its stockholders presents * * * a wholly different question," Fricke v. Angemeier, 53 Ind.App. 140, 101 N.E. 329 (1913). Accordingly a creditor may reach the assets thus distributed. In State ex rel. Thompson v. City of Greencastle, 111 Ind.App. 640, 40 N.E.2d 388 (1942), the court quoted with approval from Davis v. Hemming, 101 Conn. 713, 127 A. 514, 39 A.L.R. 133 (1925), where creditors were permitted to proceed by suit to reach the proceeds of a sale of assets distributed to shareholders. Davis expressly rejected a trust theory, however. And see Munson Chevrolet v. General Motors Corp., 66 F.Supp. 714 (N.D. Ind.1946).
 
 
 9
 We believe, however, that appellant should be considered the beneficiary of a constructive trust. Compare Neill v. Phinney, 245 F.2d 645 (5 Cir. 1957); see also Wood v. National City Bank, 24 F.2d 661 (2 Cir. 1928). In Indiana, as we have indicated, the rule has been otherwise when the question was equal treatment of the creditors of an insolvent corporation. Nappannee Canning Co. v. Reid, Murdoch & Co., 159 Ind. 614, 64 N.E. 870, 1115, 59 L.R.A. 199 (1902); Levering v. Bimel, supra.
 
 
 10
 Since the "right of an insolvent corporation to distribute its assets * * * to its stockholders presents * * * a wholly different question" than the matter of preferring such a corporation's creditors, Fricke, supra, we are disposed to conclude that now Indiana would impress a trust for appellant here. We regard, and believe Indiana would too, the directors of an insolvent corporation as trustees for the creditors, who have more than a mere right of action.
 
 
 11
 We think, in other words, that even if the rule still prevails that in general the assets of the corporation are not to be treated as a trust fund for creditors so that no preference in paying debts would be permitted, Fricke and Greencastle point toward a greater responsibility where the distribution of assets of an insolvent corporation is concerned. We do not understand that in either of those cases the Indiana court was overly concerned with what remedy it gave the creditor, as long as it avoided the doctrine permitting creditors to be preferred. Since the question whether the creditor had merely a right of action or also was the beneficiary of a trust was not squarely presented in those cases, we are unwilling to conclude from them that Indiana would not impress a trust for appellant here. On the contrary we believe Indiana more probably than not would impress a trust here, on the ground that directors of an insolvent corporation occupy a fiduciary position toward the creditors, just as they do toward the corporation when it is solvent. We hold them trustees of the corporation's property on behalf of the creditors, so that as a class the creditors should be able to follow the property into the hands of the directors, here acting for the parent. There it remained when the trustee in bankruptcy was appointed, and he took subject to that trust.
 
 
 12
 The District Court therefore was not justified in treating this petition as it did although allowing a similar petition by a creditor of another subsidiary of the debtor, where the transfer of routes was governed by the law of Michigan, a state which apparently had adopted the "trust fund" theory as to cases of dividends in corporate dissolution.
 
 
 13
 It will be necessary to determine what part of the proceeds of the sale of the routes is ascribable to Lake's assets and therefore subject to the payment of Lake's creditors.
 
 
 14
 The matter is remanded to the District Court for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 *
 Sitting by designation
 
 
 [1]
 The Trustee in Bankruptcy is not a bona fide purchaser or encumbrancer for value, Matter of James, Inc., 30 F.2d 555 (2 Cir. 1929), Collier, Bankruptcy, ¶ 70.04 (14th Ed. 1964), and there is no claim that under Indiana law the highest type of judicial lien creditor can avoid the claim of a bona fide purchaser or a beneficiary of a trust