[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a civil action wherein the plaintiff National Grange Mutual Insurance Company (National Grange) seeks reimbursement from defendant, Montgomery Elevator (Montgomery), for a payment made under a bond issued to the American Pecco Company (American Pecco) on behalf of a corporation known as Elevator One, Inc. (Elevator One) on the theory that the defendant is the successor to Elevator One.
On April 22, 1986 Elevator One entered into an equipment rental agreement with American Pecco for the rental of a "dual car personnel hoist" used to carry workers and equipment to the upper floors of a building under construction. This agreement was signed for Elevator One by its then-owner, John Barrett.
On April 24, 1986 National Grange issued a labor and material payment bond to American Pecco in conjunction with the aforesaid agreement. This bored, however, was not signed by a representative of Elevator One. The bond was in the amount of $39,200.00, with Elevator One as principal and American Pecco as obligee and was issued in connection with defendant's work on the Xerox Center project in Hartford, Connecticut. On the same day Elevator One through its President, John Barrett, executed an agreement agreeing to indemnify National Grange for "any claim, demand, loss, liability, cost, charge, attorney's fee, expense suit, ordered judgment or adjudication arising from the existence of the bond."
On June 3, 1986 a corporation known as General Elevator Co. (General) purchased all of the stock of Elevator One and Elevator One continued in operation as a wholly-owned subsidiary of General Elevator sharing equipment, employees and management. CT Page 9678
The combined corporation, General/Elevator One, serviced existing elevators and escalators and participated in the installation of elevator/escalator equipment in new construction and with respect to the new construction, General/Elevator One was an authorized Montgomery elevator representative and would sometimes install Montgomery equipment.
At some time prior to December 2, 1986 National Grange received a claim under the bond from American Pecco and in turn contacted Elevator One officials concerning said claim. Elevator One did not pay the claim and by transmittal letter dated May 29, 1987 and check dated May 26, 1987 National Grange made a payment of $15,674.35 to American Pecco under the bond, copies of which were forwarded to Elevator One. The sale of Elevator One to General Elevator had been made known to National Grange by December of 1986, six months before National Grange made any payment under the bond. Although it had knowledge of the acquisition of Elevator One, National Grange continued to send all correspondence and notices to Elevator One until after it had made payment to American Pecco.
By Asset Purchase Agreement dated July 17, 1987 (the Agreement) Montgomery Elevator purchased certain named assets of both, General and Elevator One, including the exclusive right to use the names "General Elevator" and "Elevator One" and including the good will associated with them. By entering into this asset purchase agreement Montgomery obtained all the service contracts which General Elevator and Elevator One had with various entities to maintain and repair elevators and escalators. Montgomery also purchased two contracts for the construction of elevators. These elevators were to be constructed with Montgomery equipment. In addition to this purchase of General/Elevator One's rights under the service contracts, Montgomery also purchased certain inventory equipment, motor vehicles, furniture, movable trade fixtures and miscellaneous office equipment and car rental leases, as well as raw materials, components, spare parts, tools, equipment supplies, work orders, leases and accounts receivable.
What remained of General Elevator was renamed Kruh Elevator Company, Inc. and what remained of Elevator One CT Page 9679 was renamed Kruh Elevator Associates, Inc.
As part of the purchase agreement Montgomery agreed to offer employment to many of General/Elevator One's service technicians. Later, of the 63 employees of General/Elevator One, 52 went to work for Montgomery.
The Agreement expressly provides that Montgomery does not assume and does not agree to assume any liabilities, obligations or commitments of the selling companies except that Montgomery undertakes the obligations of General and Elevator One under the service contracts, constructions contracts and miscellaneous contracts as defined in the agreement but in each case only if and to the extent that any obligations thereunder first accrue or are required to be performed on or after July 13, 1987, the date of the agreement.
The sale of the assets of General/Elevator One was made in consideration of $1,800,000.00 plus the value of certain specifically stated assets such as motor vehicles, etc.
Jeffrey Kruh, former president of General/Elevator One, as part of the Asset Purchase Agreement and in consideration of payments provided, the benefits to be derived from the Agreement and ". . . to induce Montgomery to purchase the Purchased Assets, and move effectively to transfer and protect the business and good will of the General Elevator Business . . .", agreed that until June 30, 1992 he would not directly or indirectly compete in the business of construction, installation, servicing or repairing of elevators or escalators in certain counties of Connecticut, Massachusetts and New York. It was further agreed, however, that the agreement was not to prohibit or restrict his participation in the continued conduct and operation of the business and affairs of the companies as to such contracts, rights, obligations and property currently existing and not purchased by Montgomery.
Kruh Elevator Co., Inc. was dissolved by corporate dissolution dated December 29, 1988. Kruh Elevator Associates, Inc. was dissolved by the Secretary of State by Certificate of Dissolution dated March 30, 1990 based on its failure to file a Biennial Report. CT Page 9680
"The plaintiff maintains "while the asset purchase may appear on paper to be an arm's length sale of certain assets, the evidence reveals a different story in which Montgomery consumed the `old' General/Elevator One and seemlessly continued their operations as the `new' General Elevator One"; that the defendant is the corporate successor to Elevator One and should be held liable for Elevator One's obligations.
Both parties agree that under the common law of Connecticut a purchaser of all of a corporation's assets does not thereby assume any liability for the debts of the selling corporation. "The bona fide purchase of the property of a corporation for a valuable consideration takes it free from any trust or lien in favor of creditors . . .". Davis v. Hemming, 101 Conn. 713, 725. The plaintiff maintains and the defendant recognizes and discusses in its brief that many states have formulated exceptions to the common law rule of Connecticut which, although they have never been passed on by either the Connecticut Supreme or Appellate Courts, might well be the law in Connecticut today based upon certain court decisions such as Cotter Garage Corporation v. Casson-Matava, Inc., 3 Conn. Super. Ct. R 558 (1988); Cairo v. New EnglandWomen's Musical Retreat, Inc., 11 Conn. L. Trib No. 47 at 17 (1985).
In the opinion of this court these exceptions to the law are applicable in Connecticut today and that the law as stated by the plaintiff in his brief is the applicable law of Connecticut which is
 "Under the general rule a corporation which purchases all the assets of another company does not become liable for the debts and liabilities of its predecessor unless (1) the purchase agreement expressly so provides; (2) there was a merger or consolidation of the two firms; (3) the purchaser is a "mere continuation" of the sellers or (4) the transaction is entered into fraudulently for the purpose of escaping liability."
A detailed analysis of this view of the law can be CT Page 9681 found in the decision of Judge Dorsey in Ricciardello v. J.W. Gant Co., 717 F. Sup. 56 (D. Conn. 1989).
The plaintiff's principal argument centers on Number 3 above, to the effect that an analysis of the transaction surrounding the "asset purchase" reveals that the "new" General Elevator and the "new" Elevator One were mere continuations of the old enterprises and as such should be held liable for the debt owing to National Grange. The plaintiff states "the asset purchase agreement at issue is nothing if not daunting and the documents included and the words used undeniably evidence an arm's length transaction. However, the court must look beyond the words of the agreement in determining whether successor liability should be imposed against the `new' Elevator One."
The plaintiff has introduced little or no evidence which would indicate that it is making a claim under Exception 1, 2 or 4. The purchase agreement expressly provides that the buyer does not assume the liabilities of the seller. There is no evidence to indicate that there was a merger or consolidation of the two firms and no evidence indicating that all of the stock of the seller was purchased by the buyer. Actually, the facts are to the contrary and there is no serious claim that this was a fraudulent transfer and, if so, certainly no evidence sufficient to establish fraud by clear and convincing evidence. The court therefore will discuss only the principal claim of the plaintiff, which is that the purchase by Montgomery was a mere continuation of the old enterprises.
The rule of law as expressed in Ricciardello by plaintiff in its brief is that under the general rule, a corporation which purchases [all the assets of anothercompany]** does not become liable for the debts and liabilities of its predecessor unless . . . the exceptions apply. The plaintiff maintains that the defendant purchased "substantially" all of the assets, but the evidence is to the contrary. The defendant purchased all of a certain phase of the business of General/Elevator One, i.e. the servicing contracts and two of the construction contracts, but the original corporation maintained at least 20 of the construction contracts. The plaintiff relies heavily on the fact that the defendant hired 50 employees of the seller in CT Page 9682 attempting to establish that it acquired substantially all of the assets of the companies. The court finds that this factor is consistent with the position of the defendants that these employees were important in maintaining the relationship which often existed between service employees and the service contracts which they maintained. Although the defendant agreed to allow certain of the employees which it hired from the sellers to assist the sellers in the completion of some of the construction projects (Sections 5.7, 5.8 of the asset purchase agreement) it specifically divorced itself from any other connection with these construction contracts. This particular portion of the agreement is simply an incentive for the defendant to pursue its purchase. In effect the defendant purchased that portion of the seller's business which it wanted and left the seller to its own devices thereafter. In the opinion of the court the plaintiff did not establish that Montgomery purchased all of General/Elevator One's assets or substantially all of General/Elevator One's assets. Without such evidence the plaintiff cannot establish "successor liability." Bud Antle, Inc. v. Eastern Foods,Inc., 758 F.2d 1451, 1456 (11 Cir. 1985, or qualify for any of the exceptions to the common law rule.
Although this failure to prove that defendant purchased all or substantially all of the assets of General/Elevator One might well be dispositive of this case, the court will discuss the plaintiff's principal claim to the effect that the third exception should apply, i.e. that Montgomery Elevator was but a mere continuation of Elevator One. Basically the claim is that "the purchasing corporation is merely a `new hat' for the seller, with the same or similar management and ownership."Bud Antle, supra at 1458. See also 7.
"In determining whether or not successor liability should be imposed, it is the duty of the court to examine the substance of the transaction to ascertain its purpose and true intent. Factors relevant to the `mere continuation' exception include continuity of ownership; continuity of management; continuity of personnel; continuity of physical location, assets and general business operations; and cessation of the prior business shortly after the new entity was formed." BowenEngineering v. Estate of Reeve, 799 F. Sup. 467, 487-488
CT Page 9683 (D.N.J. 1992). The focus of the exception is not whether there is simply a continuation of the business, but rather the test is whether there is a continuation of the corporate entity of the seller. Travis v. Harris Corp.,565 F.2d 443, 447 (7th Cir. 1977). The key element in determining whether the corporate entity continues to exist is a determination of whether there is a common identity of the officers, directors, and stockholders in both the selling and purchasing corporations. Bud Antle, supra 1458-59.
The court finds that there was no continuity of ownership or management. The defendant hired 80% of the employees of the seller, but not all of its employees, and there is no evidence as to how many other employees the purchaser had so that there is no evidence as to whether that 80% was a large or small fraction of the purchaser's staff. The purchaser continued to operate out of the sellers' building for a relatively short time. The sellers did not go out of business until a year in one situation and 3 years in the other.
None of the officers or directors of the selling corporations were employed by defendant after the agreement. Two distinct corporate entities continued to exist following the asset purchase and the court is of the opinion that Montgomery was not a "mere continuation of Elevator One and cannot be held liable for Elevator One's debts.
In the opinion of this court the plaintiff has failed to establish any of the exceptions to the Connecticut common law rule of successor non-liability and, therefore, judgment must enter for the defendant Montgomery Elevator.
Hale, J.