INTERSTATE PUBLIC SERVICE COMPANY *v.* MOORE, ADMINISTRATRIX.

[No. 13,079. Filed May 18, 1928. Rehearing denied October 11, 1928. Transfer denied January 4, 1929.]

*William P. Evans, Branigin & Branigin, Larz A. Whitcomb, Louis B. Ewbank* and *Samuel Dowden,* for appellant.

*Owen S. Boling, Henry E. White* and *Staff & Staff,* for appellee.

NICHOLS, J.—Action for damages for the death of Leslie Blakemore who was killed in a collision between an automobile truck driven by him and one of appellant's electric trains. There was a trial by jury, which resulted in a verdict for appellee for $1,750, on which judgment was rendered. The error assigned is the action of the court in overruling appellant's motion for a new trial.

It appears by the evidence that appellant owns and operates an interurban railroad between Indianapolis, Indiana, and Louisville, Kentucky, and passing through Greenwood, Whiteland and Franklin, all in Johnson county. At and near the place of the accident, appellant's railroad parallels and is immediately adjacent to and on the west side of the Madison and Indianapolis State road, now United States highway No. 31.

On the day of his death, February 26, 1924, and for about a month prior thereto, said Blakemore was employed by one Thompson who lived west from interurban stop No. 27. On the day of the accident, Blakemore drove the Ford truck in which he was conveying garbage,

passed south along said highway, which is paved with concrete to a width of eighteen feet, and turned to his right at stop No. 27, into a township road, known as "the Oliver road," and was struck by appellant's limited car, southward bound, at about noon.

At the place of collision, and for more than a mile north therefrom, the country is level and the view of appellant's trains unobstructed from any point on said highway. After a traveler turns from said highway into the Oliver road, a line of poles located on the east side of appellant's right of way, obstructs the view of the traveler looking northward, as he travels a short distance. At said place of the collision, the west edge of the pavement on said highway is about sixteen feet distant from the east rail of the track. From the concrete road to the surface of the crossing, there is a gradual rise to a height of about eighteen inches above the surface of the concrete highway.

On the day of the collision and at the time of the injury complained of, the weather was clear.

Appellee's intestate was a colored man, twenty-five years old, in good health and in the full possession of his faculties. He had been engaged in that kind of work for only a short time. The crossing over the track was protected by three-inch boards laid next to the rails. At the east rail and next to the turn off said concrete road, the boards on each side of the rail were eleven feet long. At the west rail, the two boards were each nine or nine and one-half feet long.

Said highway and appellant's track run slightly to the northwest, while Oliver road leaves said highway in a due westerly course, and a truck turning onto Oliver road turns at something less than a right angle, and to make the crossing from the north, with a truck, a short turn must be made and one has to swing out to the east side to get on the road and to keep from running off the

planks. The short turn has a tendency to throw the truck to the south.

Other vehicles, in making the turn into Oliver road, had missed the crossing boards at the west rail and the wheels thereof hit the west rail south of the crossing boards. Appellant had been informed of the defective condition in that the boards were too short. The defective condition of the crossing as to these boards is the only defect complained of.

Appellant's train consisted of a regular passenger coach and a dining car, with combined weight of 100 tons, and was operated by a motorman and conductor, both experienced trainmen. The train was traveling sixty miles per hour. The regular statutory crossing whistle of one long and two short blasts of the whistle was sounded. When the train was about 800 feet from the crossing, the motorman began giving short blasts of the whistle as warning to Blakemore of the approach of the train, but the brakes were not applied until about 100 to 150 feet from the crossing, and there was no slackening of the speed of the train, which was running at fifty or sixty miles per hour, running about 1,200 feet after the accident before stopping. The motorman ran the car from 700 feet above the crossing after he knew Blakemore was going to cross, and there is evidence that he sounded the warning signals as far as 800 feet from the crossing. Blakemore continued his course along the highway and turned west off the concrete road and on the crossing without stopping his truck. Upon said Blakemore's turning off the concrete road, and at a time when appellant's train was 100 to 150 feet north of the crossing, the motorman applied all the air-brake pressure at his command. As Blakemore left the concrete road and turned into Oliver road, there is a difference in the estimates of the speed at which his truck was moving, some estimating that it was traveling four to five miles

per hour, others as fast as fifteen to twenty miles per hour.

He did not stop his truck at any time. His truck continued to move forward and in a westerly direction until it was on the crossing, some evidence being that the collision came like a flash after the truck turned onto the Oliver road, while other evidence was that it was on the crossing three or four seconds before it was struck, and was vibrating against the west rail before it was struck. The evidence clearly shows that he did not stop for the approaching train, and the uncontradicted evidence shows that Blakemore had every opportunity to see and hear the approaching train and avoid the collision had he looked or listened, there being no obstruction except the line of poles mentioned above.

We have thus tried fairly to state the facts upon which the jury based its verdict, which, as it seems to us, was sufficient to sustain a verdict that appellant was guilty of negligence in the maintenance of the defective crossing. As it seems to us, the evidence would have been sufficient to sustain a finding that Blakemore was guilty of contributory negligence in entering upon the tracks without stopping, looking or listening for the approaching train, had such a verdict been returned. But whether Blakemore was guilty of contributory negligence or not, because of the happenings after Blakemore was upon the track, the judgment of the court must be affirmed.

It appears by the evidence that appellant's motorman saw Blakemore upon the highway which parallels the railroad when the car was about 1,700 feet from the crossing, at which time Blakemore had not turned off the concrete; that the motorman watched him as he turned off and knew that he was going to attempt to cross the tracks, when the car was at least 800 feet distant; that the motorman saw Blakemore as

he turned upon the tracks but that he did not attempt to stop the car until he was within 100 to 150 feet of the crossing, at which time his car was going so fast that it did not stop until it had gone beyond the crossing a distance of about 1,200 feet. There is evidence that Blakemore, with his truck, was upon appellant's track three or four seconds before the collision, with his truck vibrating against the west rail. It thus appears, and the jury was justified in finding, that Blakemore was in a helpless situation and that appellant had the last clear chance to avoid the accident. Appellant conceded that there was evidence as to its last clear chance by tendering an instruction on that doctrine.

Appellant has undertaken to present error with reference to a number of instructions, given and refused. Appellee, however, forcefully contends that none of the instructions was made a part of the record, by order of the court. Appellant has, in effect conceded appellee's contention, and has undertaken by what purports to be a *nunc pro tunc* entry, followed by *certiorari*, to show that the instructions were, in fact, properly made a part of the record. But appellant, instead of amending its brief by leave of court, and thereby making such purported *nunc pro tunc* entry a part of the statement of the record, has set it out only in the reply brief. This it cannot do. It has been repeatedly held that matter omitted in the original brief cannot be supplied in the reply brief. *Indianapolis, etc., Traction Co. v. Hardwick, Admx.* (1919), 70 Ind. App. 192, 123 N. E. 249; *Hammond, etc., R. Co.* v. *Kasper* (1919), 71 Ind. App. 328, 123 N. E. 360; *Lyons* v. *Souder* (1914), 56 Ind. App. 443, 101 N. E. 511; *State, ex rel.,* v. *Birden, Trustee* (1918), 187 Ind. 466, 119 N. E. 865; *Macbeth Evans Glass Co.* v. *Jones* (1911), 176 Ind. 221, 95 N. E. 567.

As stated in the last case cited, appellee would have no

right to reply except on obtaining permission. By leave of court, appellant should have amended its original brief or have filed a supplement thereto. Nothing is presented for our consideration as to the instructions. We find no reversible error.

Affirmed.

Enloe, J.—I concur in the affirmance of this case, but not in what is said as to the last clear chance.