Bronx Gas and Electric Company, Respondent, *v.* Milo R. Maltbie et al., Constituting the Public Service Commission of the State of New York, et al., Appellants.

(Argued June 10, 1935; decided July 11, 1935.)

*Charles G. Blakeslee, John J. Donohue* and *John T Ryan* for appellants. The Public Service Commission in adopting its order charging costs to the respondent proceeded in the manner required by sections 18-a and 18-b of the Public Service Law (Cons. Laws, ch. 48) and according to due process of law. (*New York, O. & W. R. R. Co.* v. *Griffin*, 235 N. Y. 174; *Wisconsin Tel. Co.* v. *Public Service Comm.*, 206 Wis. 589; *People ex rel. N. Y. Elec. Lines Co.* v. *Squire*, 145 U. S. 175; *Charlotte R. R. Co.* v. *Gibbes*, 142 U. S. 386; *St. Louis Coal Co.* v. *Illinois*, 185 U. S. 203; *Village of Saratoga Springs* v. *Saratoga G., Elec. L. & P. Co.*, 191 N. Y. 123.) Section 18-a of the Public Service Law charging utility companies with the cost of investigations by the Public Service Commission is constitutional. (*N. Y. & Richmond Gas Co.* v. *Prendergast*, 10 Fed. Rep. [2d] 167; *N. Y. Tel. Co.* v. *Prendergast*, 36 Fed. Rep. [2d] 54; *Charlotte R. R.*

*Co.* v. *Gibbes*, 142 U. S. 386; *People ex rel. N. Y. Elec. Lines Co.* v. *Squire*, 107 N. Y. 593; 145 U. S. 175; *Sage* v. *Brooklyn*, 89 N. Y. 189; *People* v. *N. Y. Carbonic Acid Co.*, 196 N. Y. 421; *People ex rel. Darling* v. *Warden of City Prison*, 154 App. Div. 413; *People* v. *Beakes Dairy Co.*, 222 N. Y. 416; *Jeffrey Mfg. Co.* v. *Blagg*, 235 U. S. 571.) If section 18-b is unconstitutional in part, the doctrine of severance should be applied. (*People ex rel. Alpha P. C. Co.* v. *Knapp*, 230 N. Y. 48; *People* v. *Mancuso*, 255 N. Y. 463.) That public utilities must pay the costs of investigations, irrespective of their outcome, is not a denial of equal protection of law to utilities. (*Gulf, Col. & Santa Fe Ry.* v. *Ellis*, 165 U. S. 150.)

*William L. Ransom, Richard Joyce Smith* and *Henry Jaffe* for respondent. The Commission's proceedings and orders, eventuating in the order charging costs, violated the constitutional guaranties of due process in the taking of property, and fail to comply with section 18-a of the Public Service Law, in that the company was given no opportunity to be heard as to the matters on which it was entitled to be heard and no evidence was presented to sustain the order. (*West Ohio Gas Co.* v. *Public Utilities Comm. of Ohio*, 294 U. S. 63; *Stuart* v. *Palmer*, 74 N. Y. 183; *Norwegian Nitrogen Products Co.* v. *United States*, 288 U. S. 294; *Interstate Commerce Comm.* v. *Louisville & Nashville R. R. Co.*, 227 U. S. 88; *Interstate Commerce Comm.* v. *Illinois Central R. R. Co.*, 215 U. S. 452; *Oregon R. R. & N. Co.* v. *State Railroad Commrs.*, 224 U. S. 510; *Aultman* v. *Syme*, 163 N. Y. 54; *Matter of Hering*, 133 App. Div. 293; 196 N. Y. 218; *B. & O. R. R. Co.* v. *United States*, 264 U. S. 258; *Atlantic Coast Line R. R. Co.* v. *North Carolina Comm.*, 206 U. S. 1.) If chapter 282 of the Laws of 1934 is construed as authorizing the Commission to issue orders assessing costs without any hearing, evidence or findings, and without judicial review, then the statute is unconstitutional

under the Fourteenth Amendment of the Constitution of the United States and section 6 of article I of the Constitution of the State of New York. (*Southern Ry. Co. v. Virginia*, 290 U. S. 190; *Interstate Commerce Comm. v. Louisville & Nashville R. R. Co.*, 227 U. S. 88; *Stuart v. Palmer*, 74 N. Y. 183; *Norwegian Nitrogen Co. v. United States*, 288 U. S. 294.) The order directing the assessment of costs against the company is unconstitutional as a denial of due process because the Commission has failed to make basic findings of fact upon evidence. (*Interstate Commerce Comm. v. Baltimore & Ohio R. R. Co.*, 293 U. S. 454; *Panama Refining Co. v. Ryan*, 293 U. S. 388; *Florida v. United States*, 282 U. S. 194; *Wichita R. R. Co. v. Public Utilities Comm.*, 260 U. S. 48.) Chapter 282 of the Laws of 1934 is unconstitutional in that it authorizes the chairman of the Commission to approve the payment of State funds to the temporary employees of the Commission without appropriation by the Legislature as required by section 21 of article III of the New York State Constitution. (*Switzer v. Commissioners*, 134 App. Div. 487; *People v. Roberts*, 30 App. Div. 69; 156 N. Y. 693; *People ex rel. Hopkins v. Board of Supervisors*, 52 N. Y. 556; *Williams v. Standard Oil Co.*, 278 U. S. 235; *Barker v. Town of Oswegatchie*, 10 N. Y. Supp. 834; *State of Iowa v. Executive Council*, 207 Iowa, 923; *State v. St. Louis Ry. Co.*, 253 Mo. 642; *State v. Olson*, 173 Wash. 60; *Parwal v. State*, 71 Okla. 121; *Edwards v. Davis*, 146 Tenn. 615; *Oliver v. Southern Trust Co.*, 138 Ark. 381.) Section 18-b cannot be saved by a claim that subsequent Legislatures, in the annual appropriation bill, may see fit to appropriate moneys in the revolving fund. (*People ex rel. Hopkins v. Board of Supervisors*, 52 N. Y. 556; *Baltimore v. O'Conor*, 147 Md. 639.)

CRANE, Ch. J. The provisions of the Public Service Law (Cons. Laws, ch. 48) relating to gas and electrical

corporations are to be found in article 4. Section 71, as amended, provides that, upon the complaint in writing of the mayor of a city, the trustees of a village or the town board of a town, or, upon the complaint in writing of not less than twenty-five customers, or, upon the complaint of the corporation supplying the gas or electricity, the rates charged shall be investigated by the Commission. " When such complaint is made, the commission may, by its agents, examiners and inspectors, inspect the works, system, plant, devices, appliances and methods used by such person or corporation in manufacturing, transmitting and supplying such gas or electricity, and may examine or cause to be examined the books and papers of such person, or corporation pertaining to the manufacture, sale, transmitting and supplying of such gas or electricity. The form and contents of complaints made as provided in this section shall be prescribed by the commission. Such complaints shall be signed by the officers, or by the customers, purchasers or subscribers making them, who must add to their signatures their places of residence, by street and number, if any."

Section 72 provides for notice of hearing in respect to the matters complained of. It states further: " An investigation may be instituted by the commission of its own motion as to any matter of which complaint may be made, as provided in section seventy-one of this chapter, or to enable it to ascertain the facts requisite to the exercise of any power conferred upon it." After the hearing of such investigation the Commission may by order fix just and reasonable rates. The power of the Public Service Commission to make investigation upon complaint or of its own motion into the affairs of public service corporations and to fix the rates to be charged is no longer open to question. (*Village of Saratoga Springs* v. *Saratoga Gas, Electric Light & Power Co.*, 191 N. Y. 123.)

Heretofore, the costs and expenses of maintaining the Public Service Commission and its staff have been borne by the public at large through the process of general taxation. The public funds have been appropriated to meet the charges incidental to conducting investigations required by these sections 71 and 72 of the Public Service Law. As early as 1891, in *Charlotte, Columbia & Augusta R. R. Co.* v. *Gibbes* (142 U. S. 386, 394), it was held to be consistent with the provisions of the Federal Constitution to charge the cost and expenses of these Commissions or regulatory bodies to the public service corporations, thus relieving the public of taxation for this purpose. In that case it was held that the statutes of South Carolina requiring the salaries and expenses of the State Railroad Commission to be borne by the several corporations owning or operating railroads within the State were not in conflict with the Fourteenth Amendment of the Constitution. Mr. Justice FIELD said, in writing the opinion: " The mode or manner of regulation is a matter of legislative discretion. When exercised through commissioners, their services are for the benefit of the railroad corporations as well as of the public. Both are served by the required supervision over the roads and means of transportation, and there would seem to be no sound reason why the compensation of the commissioners in such case should not be met by the corporations, the operation of whose roads and the exercise of whose franchises are supervised. In exacting this there is no encroachment upon the Fourteenth Amendment. Requiring that the burden of a service deemed essential to the public, in consequence of the existence of the corporations and the exercise of privileges obtained at their request, should be borne by the corporations in relation to whom the service is rendered, and to whom it is useful, is neither denying to the corporations the equal protection of the laws or making any unjust discrimination against them."

As late as 1934, by chapter 282 of the laws of that year, the Legislature of this State shifted the cost of investigation from the general public to the corporations. As the legality of these sections has been challenged, it is necessary to give them in full. They are now sections 18-a and 18-b of the Public Service Law.

" § 18-a. Costs and expenses of proceedings before the commission. Whenever the public service commission in a proceeding upon its own motion, upon complaint, or upon application to it, shall deem it necessary in order to carry out its statutory duties, to investigate the operations, service, practices, accounting records, rates, charges, rules and regulations, or to make valuations or revaluations of the property of any public utility, such public utility shall be charged with and pay such portion of the compensation and expenses of the commission, its officers, agents and employees, including employees temporarily employed, as is reasonably attributable to such investigation, valuation or revaluation, provided an opportunity to be heard thereon shall first have been granted to such public utility. The commission shall ascertain the costs, including the compensation and expenses of the commission, its officers, agents and employees, and shall determine the amount to be paid by the public utility and shall render a bill therefor by registered mail to the public utility. Such bill shall be rendered either at the conclusion of the investigation, valuation or revaluation, or from time to time during its progress, and the amount of such bill so rendered by the commission shall be paid by such public utility to the commission within thirty days from the date of its rendition. The total amount which may be charged by the commission to any public utility under authority of this section in any calendar year shall not exceed one-half of one per centum of such public utility's gross operating revenues derived from intrastate utility operations in the last preceding calendar year. The amount assessed against a

public utility, not paid within thirty days after such determination, shall draw interest at the rate of six per centum per annum.

" § 18-b. Establishment of revolving fund; appropriation. The sum of three hundred thousand dollars is hereby appropriated to the department of public service out of any moneys in the state treasury not otherwise appropriated, to establish and provide a revolving fund for the use of the public service commission in paying the compensation and expenses of employees temporarily employed in investigating the operations, service, practices, accounting records, rates, charges, rules and regulations, or in making valuations or revaluations of the property of any public utility. All moneys collected by the public service commission pursuant to section eighteen-a shall be paid monthly, accompanied by a detailed statement thereof, by the public service commission to the department of taxation and finance and all of said moneys so paid representing the compensation and expenses of temporary employees shall not be commingled with any other moneys but shall be deposited in a separate bank account or accounts and credited to said revolving fund; the balance of said moneys shall be paid into the state treasury and credited to the general fund. The said sum of three hundred thousand dollars herein appropriated and all subsequent credits to said revolving fund shall be paid on the audit and warrant of the comptroller upon vouchers approved by the chairman of the public service commission."

A brief examination of these sections shows that nowhere do they modify the previous duty and power placed with the Public Service Commission. The full power of investigation to determine reasonable rates, either upon complaint or upon its own motion, rests with the Commission. The only subject dealt with by these additions of the Laws of 1934 relates to the costs and expenses of conducting such investigation. The Public Service Com-

mission is not obliged to show in the first instance to any court the grounds or the reasons for its investigation. The duty rests upon it to make the investigation upon complaint or upon its own motion when it, and not the courts, deems it necessary. The purpose and the regulatory powers of the Commission would be nullified were it obliged in the first instance to show necessity for examination or investigation. The Legislature has given to the Commission, and not to the courts, the right to determine these matters.

The determination of the question, viz., should an investigation be made, rests solely in the discretion of the Commission, and in its exercise of this discretion the courts may not interfere. (*Martin* v. *Mott*, 12 Wheat. [U. S.] 19, 29, 33; *Philadelphia & Trenton R. R. Co.* v. *Stimpson*, 14 Pet. [U. S.] 448, 458.)

Neither is there any discretion given to the courts to determine when or how the expenses shall be charged to the investigated corporation. Section 18-a distinctly states that whenever the Public Service Commission shall deem it necessary to investigate the rates of any public utility, such public utility shall be charged with and pay such portion of the compensation and expenses of the Commission as is reasonably attributable to such investigation. The respondents and the court below have read this section as though the expenses can only be charged to the utility when the investigation appears to be necessary, and that, to establish such necessity, the Commission, after a hearing, must make findings of fact based upon evidence showing such necessity. This statute will bear no such interpretation. The previous law has not been modified; the Commission may investigate whenever it shall deem necessary; the public utility *shall* be charged with the reasonable expenses. The hearing provided for in section 18-a is on the cost and expenses, not on the necessity for the examination. This is the way the section reads; this is the interpretation we must give it.

To hold otherwise cripples the whole proceeding and renders the Commission almost powerless. The words, " provided an opportunity to be heard *thereon* shall first have been granted to such public utility " apply to the preceding clause, " such portion of the compensation and expenses of the commission, its officers, agents and employees, including employees temporarily employed, as is . reasonably attributable to such investigation, valuation or revaluation."

The respondent concedes, as it must, that it is legal to charge the cost and expenses of these investigations to all the like public utilities in the State ratably, but claims that it is unconstitutional to charge the cost to the individual corporation investigated. We cannot follow such reasoning. Why utilities, against whom no complaint has been made and who do not need investigating in the opinion of the Commission, should be charged with the expenses of investigating the utility whose rates have been questioned, is difficult to understand. Surely there is nothing unfair in limiting the assessment of costs upon the public utility examined. Suppose this petitioner had petitioned for an increase of rates. Is there any reason why the examination leading to an increase should result in expenses being charged to other like public utilities? We see nothing in this point.

We, therefore, hold that the ruling below is erroneous, and that the petitioner is to be charged with the costs and expenses reasonably attributable to this investigation without previous findings of necessity.

Other laws of a similar nature have long been on the statute books. (See Laws of 1885, ch. 499, creating the Board of Commissioners of Electrical Subways and charging its expenses to the companies operating electrical conductors in the city of New York.) (*People ex rel. New York Electric Lines Co.* v. *Squire,* 107 N. Y. 593; affd., 145 U. S. 175.) (See, also, Insurance Law [Cons. Laws, ch. 28], § 7; and the Banking Law [Cons. Laws, ch. 2], § 17.)

We do think, however, that the practice adopted by the appellants has been irregular. By order dated May 10, 1934, the Commission, deeming it necessary to investigate the operations, rates and charges of the Bronx Gas and Electric Company, notified the company that on May 23, 1934, a public hearing would be held in New York city to afford the company an opportunity to be heard as to the charging to it of such portion of the compensation and expenses of the Commission and its employees as was reasonably attributable to such investigation. On the hearing the company failed to present any facts in opposition to such charge and, accordingly, on September 12, 1934, the Commission adopted an order charging the Bronx Gas and Electric Company on or after September 15th such portion of the compensation and expenses of the Commission and its employees as was reasonably attributable to such investigation. It appears, however, that in the meantime the Commission, by order in July and in August of 1934, determined the amount of costs which should be paid by the company, and sent bills therefor. These orders have since been vacated, but they indicate a misunderstanding regarding the practice under section 18-a, as above quoted.

The petitioner, Bronx Gas and Electric Company, is entitled to be heard upon these expenses which have been charged to it, both as to their reasonableness and as to their being attributable to the investigation. The bills referred to in section 18-a can only be sent after this opportunity for a hearing has been granted. The Commission is not obliged to give any notice or hearing as to whether the costs and expenses shall be charged to the corporation. The statute distinctly states that they *shall* be charged to the corporation, and the orders made in May and September were, in our opinion, unnecessary but harmless. The company, however, is surely entitled to a hearing as to the amount of the costs and expenses, whether reasonable or extravagant, and whether they

are properly attributable to the investigation. This hearing the Commission is bound to afford.

No orders fixing any amounts are before us. The appeal is taken from the order on certiorari, which reviewed the proceedings leading up to the orders of May and September, directing merely that the expenses of the investigation shall be charged to the company. While these orders were unnecessary, as we have stated, they are not in and of themselves improper. The Appellate Division, however, has reversed these orders of the Commission and held that no charges or expenses can be collected from the petitioner until the Public Service Commission finds upon evidence that the investigation as to rates is necessary. It must make this finding before any investigation is had. This, as we before stated, is erroneous, not in accordance with the statute, and such ruling must be reversed. We do hold, however, that these expenses and charges cannot be billed to the company, under section 18-a, until it has had an opportunity to be heard as to their reasonableness.

The expenses passed on to the utilities under these provisions of the Public Service Law will be, in all probability, in turn passed on to the consumers. They, not the general public, as heretofore, may share the cost of hearings and examinations. These utility companies have always been allowed to include their own expenses of conducting proceedings before the Commission in operating expenses. (*New York & Richmond Gas Co.* v. *Prendergast,* 10 Fed. Rep. [2d] 167, 181; *New York Tel. Co.* v. *Prendergast,* 36 Fed. Rep. [2d] 54.)

Many of the cases cited by the respondent have no application as they refer to orders changing grades of railroads or establishing reasonable rates. Of course no such orders can be made without affording the public utility a full and complete hearing. We have no such question here. The proceeding which is being conducted is to investigate or examine as to the rates charged by

the Bronx Gas and Electric Company. The company not only has had notice but has appeared at the hearing and has been and will be given the rights of any litigant in such matters. This is conceded. The question which is here concerns the power of the Legislature to place the costs and expenses of such hearings and examinations upon the company. That this power exists there seems to be no doubt for the reasons stated in the decisions above cited. Whether the company must have an opportunity to be heard on the amount of the bill need not detain us as the statute affords such a hearing. Other cases cited turn upon the wording of the governing statutes which differ in nearly every instance.

Another objection which has been raised as to the constitutionality of sections 18-a and 18-b is due to the revolving fund provision contained in section 18-b. Article 3, section 21, of the State Constitution reads: " No money shall ever be paid out of the treasury of this State or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within two years next after the passage of such appropriation act; and every such law making a new appropriation or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied; and it shall not be sufficient for such law to refer to any other law to fix such sum."

The Legislature, by section 18-b, appropriated $300,000 to the Department of Public Service for the use of that Department. This section, however, provides for other moneys, called a revolving fund. The act says that these moneys thus credited to the revolving fund, as well as the $300,000 appropriated, shall be paid on the audit and warrant of the Comptroller upon vouchers approved by the Chairman of the Public Service Commission.

With the $300,000 appropriation there is no objection. When it comes to the moneys collected from public

utilities and paid into the Department of Taxation and Finance it is said that no such appropriation of them has been made as is required by the above provision of the Constitution. Whether this be so or not we need not determine. The question is not involved on this appeal. As before stated, the only orders before us are those directing that the expenses of the investigation be charged to the petitioner. No hearing has yet been had as to the amount of these expenses, and no order in the record has fixed their nature or extent.

Even if this part of section 18-b relating to the expenditure of the revolving fund be unconstitutional, and we do not intimate that it is, the provision can easily be severed from the other portions of section 18-b without in any way interfering with the collection from the petitioner of such charges as are attributable to the proceeding. (*People ex rel. Alpha P. C. Co.* v. *Knapp,* 230 N. Y. 48, 60; *People* v. *Mancuso,* 255 N. Y. 463, 473.)

The order of the Appellate Division should be reversed and the matter remitted to the Public Service Commission to proceed in accordance with this opinion, with costs in this court and in the Appellate Division. The first question certified should be answered in the affirmative and the second and third in the negative.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur; CROUCH, J., not sitting.

Ordered accordingly.