STATE EX REL. THOMPSON, STATE AUDITOR
*v.* CITY OF GREENCASTLE ET AL.

[No. 16,775. Filed March 23, 1942. Rehearing denied May 9, 1942. Transfer denied June 9, 1942.]

642

*George N. Beamer,* Attorney General, and *Urban C. Stover,* Deputy Attorney General, for appellant.

*Clyde H. Jones,* and *Fesler, Elam, Young & Fauvre,* all of Indianapolis, and *Courtland C. Gillen* and *Glenn H. Lyon,* both of Greencastle, for appellees.

STEVENSON, J.—This action was brought by the appellant against the appellees by a complaint in two paragraphs. The first paragraph of the complaint alleged that the Greencastle Water Works Company was a corporation which had been organized and had existed under the laws of the State of Indiana for many years prior to June 1, 1935.

The complaint alleged that in 1928, this corporation filed a petition with the Public Service Commission of Indiana for an increase in rates, and in such proceeding expenses were incurred by said commission in the sum of $620.16, which amount the Greencastle Water Works Company was ordered to pay. This amount was not paid, however; and on or about the 1st day of June, 1935, the appellees, George H. Alexander, Charles A. Edwards and Benjamin Perk, who were the owners and holders of all the stock of the said Greencastle Water Works Company, sold said capital stock to the City of Greencastle, Indiana, for a named consideration of $363,600.00.

The complaint alleges that this transaction was a part of a general plan by which the property of the Greencastle Water Works Company was to be acquired by the City of Greencastle.

The complaint alleges that the capital stock of the Greencastle Water Works Company was transferred by the appellees to one Charles C. Huestis, under an arrangement whereby all the property of the Water

Works Company, both real and personal, was to be acquired eventually by the City of Greencastle, leaving no assets belonging to the water works company.

The complaint further alleges that to carry out this arrangement certain persons were selected by the appellees, Alexander, Edwards and Perk, and the City of Greencastle, and that the persons so selected acted as officers of the Greencastle Water Works Company, and executed the conveyances required to transfer the property. In order to accomplish such transfer, the City of Greencastle issued bonds in the amount of $450,000.00, the proceeds from which retired an outstanding obligation of $100,000.00 against the Water Works Company, $350,000.00 of which was paid to the appellees, Alexander, Edwards and Perk, and an additional amount of $13,600.00 was borrowed from a local bank and also paid to the appellees, Alexander, Edwards and Perk, in consideration for the transfer of their stock. The complaint alleges that the entire transaction involving the sale of the capital stock and the sale and transfer of the Water Works Company property was one transaction and was so understood and carried through by all of said parties; that this sale and transfer were consummated between the appellees, as stockholders of the corporation, and the City of Greencastle, in order to avoid the payment of the debt due by said company to the appellant.

The complaint alleges that after said sale and transfer of property the Greencastle Water Works Company was left without assets, and the appellees, Alexander, Edwards and Perk, received all of the consideration paid for such property, and thereby became liable for the payment of this obligation. The complaint alleges that the City of Greencastle also assumed the payment of this obligation, and, became liable therefore, as a

party to this transaction, all of which is now due and wholly unpaid.

The second paragraph of complaint alleges in substance the same facts, with reference to the identity of the parties, and contains the further allegation that in 1934, in a proceeding before the Public Service Commission of the State of Indiana an investigation was made for rate making purposes, in which expenses in the amount of $2,444.28 were incurred, which expenses were ordered paid by the Greencastle Water Works Company. The second paragraph of complaint alleged the same facts with reference to the sale of the corporate properties, and charged that the instrument in writing, by which some of the corporate property was conveyed to the City of Greencastle, contained a statement by which the City of Greencastle assumed the account due and owing to the Public Service Commission of Indiana. The complaint charges that these transfers were made without the approval of the Public Service Commission of Indiana, and that all parties to this transaction are obligated in law for the payment of this debt.

Demurrers were filed to each paragraph of complaint by the City of Greencastle, Indiana and by the appellees, Alexander, Edwards, and Perk. The demurrers of Alexander, Edwards, and Perk were overruled, and the demurrer of the City of Greencastle was sustained as to the first paragraph of complaint, and overruled as to the second paragraph of complaint.

The appellees, Alexander, Edwards, and Perk, filed a second paragraph of answer to the first paragraph of complaint, which answer alleged that the $620.16 in costs taxed by the Public Service Commission of Indiana against the Greencastle Water Works Company was entered as a part of the proceedings which

were appealed to the United States District Court and was by said court vacated and set aside. The appellees averred that because said order was held to be invalid by the Federal Court no liability arose on the part of the Greencastle Water Works Company to pay the costs.

For a third paragraph of answer, these appellees set forth a written copy of the agreement by which the appellees agreed to sell to Charles C. Huestis of Greencastle their common stock in the Greencastle Water Works Company. This paragraph of answer alleged the sale and delivery of the common stock of the Greencastle Water Works Company pursuant to said agreement, and denied that the appellees had any knowledge of, or information concerning, or participated in the proceedings by which the property of the Water Works Company was eventually conveyed to the City of Greencastle. This paragraph of answer also set forth a copy of the bill of sale from Charles C. Huestis to the City of Greencastle, one of the terms of which was the assumption by the City of Greencastle of the account due the Public Service Commission.

A fourth paragraph of answer recited again the method by which the appellees disposed of their common stock; alleged the assumption of the expenses taxed by the Public Service Commission by the City of Greencastle, and alleged the entire good faith of the appellees in these proceedings.

The City of Greencastle filed a second paragraph of affirmative answer to the second paragraph of complaint, in which it alleged the adoption of the city ordinance authorizing the purchase of the Greencastle Water Works Plant and Distribution System, and set forth a copy of the contract had with Mr. Huestis for the purchase thereof. The answer further averred

that the City of Greencastle had no knowledge of any outstanding indebtedness or charges against the Greencastle Water Works Company and assumed no obligations therefor, and authorized no one acting for and on their behalf so to do.

A third paragraph of answer was filed by the City of Greencastle to the second paragraph of complaint which alleged that the costs incurred were not entered in the record until January 31, 1936, after the City of Greencastle had acquired the property, and was not an outstanding obligation against the Greencastle Water Works Company at the time of the purchase.

Demurrers were filed to all these affirmative paragraphs of answer. The appellant's demurrer was sustained as to the second paragraph of answer of the appellees, Alexander, Edwards, and Perk. All other demurrers were overruled.

The case was submitted to the court and jury for trial, and, at the conclusion of the appellant's evidence, the appellees filed a motion to instruct the jury to find for the appellees. The court sustained these motions, and instructed the jury to return a verdict for each of the appellees, which was accordingly done. Judgment was entered upon this verdict. A motion for new trial was filed and overruled and this appeal has been perfected. The errors assigned on appeal are the alleged errors in sustaining the demurrer to the first paragraph of complaint, and in overruling the appellant's motion for a new trial.

The appellant contends that the court, in the trial of this case, committed reversible error in directing the jury to return a verdict for the appellees at the close of the appellant's case. The rule, as recognized in this State, is that:

"The trial court, before it gives a peremptory instruction, must accept as true all facts which the evidence tends to prove, and must draw against the party asking the instruction all inferences which the jury might reasonably have drawn, and if there are legitimate inferences tending to support the right of recovery in favor of one against whom the instruction is asked, the question should be left to the jury." *Gulbranson* v. *Hart* (1929), 90 Ind. App. 171, 177, 168 N. E. 483.

There is evidence in the record from which the jury might have reasonably inferred that the City of Greencastle, Indiana, was desirous of acquiring title to the public utility owned and operated by the Greencastle Water Works Company. This company was a corporation, all of whose stock was owned by the appellees, Alexander, Edwards, and Perk, and these appellees were the officers and directors of said corporation. There is evidence from which the jury might infer that these appellees knew of the plan by which the City of Greencastle was to acquire the title to the assets of this corporation and participated therein. These appellees, as officers, directors and owners of the Greencastle Water Works Company, knew of the charges levied against it by the Public Service Commission of Indiana in the hearings which had been conducted before said commission, and the costs in one of these hearings, which totaled $2,444.28, was listed in the schedule of assets and liabilities furnished by the appellees to the attorney for the City of Greencastle, prior to the consummation of this sale. The appellees, Alexander, Edwards, and Perk, must have known of the bond issue in the amount of $450,000.00 by the City of Greencastle, with the proceeds of which their stock was purchased, for all parties were present when the money from the sale of these bonds was delivered by the bank through which the securities were negotiated, and from which funds

in the amount of $100,000.00 were used to retire the outstanding bonded indebtedness of the Greencastle Water Works Company, and a $350,000.00 check was endorsed by the representatives of the City of Greencastle directly to the appellees. An additional check for $13,600.00 was also delivered to the appellees in payment of the balance due on the purchase price. This amount was determined from a schedule of assets and liabilities furnished by the Greencastle Water Works Company, in which the assets, consisting of accounts receivable, materials, supplies and cash, totaled $21,434.38, and from which were deducted obligations outstanding, including State and Federal taxes, and the sum of $2,421.10 due the Public Service Commission of Indiana, totaling $7,521.02. An allowance of $313.36 to compensate for errors in estimates left a balance of $13,600.00, which the City of Greencastle was required to pay.

From a consideration of these facts, we cannot say, as a matter of law, that the appellees, Alexander, Edwards, and Perk, did not participate in the sale of the assets of the Greencastle Water Works Company to the City of Greencastle. By this transaction all of the assets of the Greencastle Water Works Company were disposed of, and by this transaction the appellees, as stockholders, received in cash the full value thereof. Nothing was accordingly left as assets of the Greencastle Water Works Company with which to pay and satisfy its debts.

As to the claim of the appellant for the costs incurred in one proceeding totaling $2,444.28, all parties admit its validity as against the Greencastle Water Works Company.

The trial court, by its directed verdict, has in effect approved a transaction in which the Greencastle Water

Works Company was able to dispose of its assets ■ and leave its creditors unpaid. Such a result should not be reached by a court, if the law and the facts will support any other conclusion. "The law which sends a corporation into the world with the capacity to act imposes upon its assets liability for its acts. The corporation cannot disable itself from responding by distributing its property among its stockholders, and leaving remediless those having valid claims. In such a case the claims after being reduced to judgments may be satisfied out of the assets in the hands of the stockholders." *Pierce* v. *United States* (1921), 255 U. S. 398, 402, 65 L. ed. 697.

In the case of *Davis* v. *Hemming* (1925), 101 Conn. 713, 127 A. 514, 39 A. L. R. 133, the Eagle Pocket Knife Company sold to the Winchester Repeating Arms Company all of its business, assets and property, and all of the shares of its capital stock for a stipulated sum. The cash was paid directly by the purchaser, by individual checks, to each stockholder, and the Knife Company was left without assets with which to pay its creditors, the existence of which the stockholders and officers participating in this transaction had knowledge. In permitting the creditors to enforce the liability against the individual stockholders, the court said, p. 727:

> "In the instant case the Knife Company, its officers and stockholders, made a sale, upon ample consideration, of all the property of the corporation, and distributed the purchase price, the equivalent of the assets, among the stockholders, who then had knowledge that the plaintiff claimed that the Knife Company was indebted to him. Such a distribution of the assets of a corporation among stockholders is unlawful as to any creditor injured thereby, and he may proceed, by an appropriate suit, against such stockholders, to enforce the payment of his claim against the corporation."

The appellees, however, seek to avoid the application of these rules of law by contending that there has been no distribution to them of the assets of this corporation. The appellees contend that all they did was to sell their stock, for which they received payment. The appellees, however, in asserting this position, cannot escape the fact that they were also the officers and directors of the Greencastle Water Works Company. They knew, as officers of this corporation, that all of its assets were being sold to the City of Greencastle. They knew that in this transaction the stockholders were receiving in cash the full value of such assets. By the transfer of their stock to intermediaries or agents of the purchaser, their resignation as directors, and immediate appointment of such intermediaries or agents as new directors for the sole purpose of executing deeds and bills of sale by which the assets of the corporation are transferred to the purchaser, such stockholders have effected the sale of the corporate assets. By this indirect method they seek to obtain the full value of the corporate assets at the expense of its general creditors. Such a result cannot be permitted.

" 'After all, this artificial body is but the representative of its stockholders, and exists mainly for their benefit, and is governed and controlled by them through the officers whom they elect. And the interest and power of legal control of each shareholder is in exact proportion to the amount of his stock. It is therefore but just that when the interest of the public, or of strangers dealing with this corporation is to be affected by any transaction between the stockholders who own the corporation and the corporation itself, such transaction should be subject to a rigid scrutiny, and if found to be infected with anything unfair towards such third person, calculated to injure him, or designed intentionally and inequitably to screen the stockholder from loss at the expense of the general

creditor, it should be disregarded or annulled so far as it may inequitably affect him.'" *Updike* v. *United States* (1925), 8 F. (2d) 913, 917.

The rule announced by the above authorities is again tersely stated in Vol. 13, Fletcher Cyclopedia Corporations, § 5806, as follows: "One who owns all the stock of a company has no authority to transfer, to the prejudice of corporate creditors."

It is true that the appellees, Alexander, Edwards, and Perk, entered into an agreement to sell all the stock of the Greencastle Water Works Company for the sum of $363,600.00. This contract was made with Charles C. Huestis, who was the named purchaser. It was witnessed, however, by the attorney for the City of Greencastle. This agreement for sale was embodied in the city ordinance passed by the City of Greencastle two days later, by which the city was authorized to purchase. On May 31st the mayor of the City of Greencastle, the city attorney and Mr. Huestis all met the appellees in their office in Indianapolis in company with the attorneys for the banks who were handling the bonds for the purpose of closing this sale.

Mr. Huestis testified that there "was some hitch in the proceedings, so nothing was done that day." The next day, June 1st, all parties again met in the appellees' office at Indianapolis, where the witness Huestis was introduced to the owners of the Water Works Company as the man to whom they were going to sell the water works. The witness testified that the parties seemed to consider this to be some sort of a joke. It was on this occasion that the sale was consummated in the manner above set forth.

It is our opinion that there was evidence in this case upon which to base an inference that the appellees' stock was paid for out of funds derived from the sale

of corporate assets. It was not a sale of corporate stock to Mr. Huestis as a bona fide purchaser, who paid value therefor.

A case very similar in facts to the case at bar is that of *Taylor* v. *Spurway* (1936), 16 F. Supp. 566, 571, 572. Without reciting the facts, which are quite involved, it is sufficient to say that the owner of the majority of the stock in a corporation undertook to effect a sale of the corporate assets through the medium of a sale of the outstanding common stock of the corporation, the appointment of dummy directors to make sale of the corporate assets, and the funds derived therefrom to be used as a "liquidating dividend" for the payment of the shares of stock so sold. The court said:

> "Looking through the artifice of form to the substance of these transactions, the payment of the so-called 'liquidating dividend' was in essence nothing more than a purchase of the capital stock of City Trust Company with its own assets. As matters now stand, all stockholders of City Trust Company have received $200 per share for their stock in cash extracted from corporate assets, while creditors remain unpaid to the extent above stated, the assets available to pay the remaining indebtedness being apparently insufficient."

In speaking further on this case, the court said:

> "Courts of equity are astute to detect and defeat any scheme or device which is calculated to withdraw the capital or other assets of a corporation for the benefit of stockholders to the prejudice of creditors. Transactions of the character shown by the evidence in this case between two corporations dominated by the same directors and stockholders are well calculated to arouse suspicion. They merit rigid and severe scrutiny when questioned by creditors or their representatives."

Facts similar to the case at bar were before the Supreme Court of Washington in the case of *Garrow* v.

*Fraser* (1917), 98 Wash. 88, 90, 167 P. 75. In this case, the court said:

"Both reason and authority support the proposition that, where one stockholder sells his shares of stock to another stockholder under an agreement by which the stock is to be paid for out of the assets of the corporation, the seller is liable, in an action brought for the benefit of the creditors of the corporation, to the extent of the value of the assets which he has received. . . ."

The appellees, Alexander, Edwards, and Perk, as owners, officers and directors of the Greencastle Water Works Company could not have passed title to the corporate assets directly to the City of Greencastle and retained the proceeds derived from such sale, thereby leaving the corporate creditors unpaid. Any scheme or device which attempts to accomplish this result by an indirect method must accordingly be disapproved by the court. *Zaring* v. *Kelly* (1921), 74 Ind. App. 581, 128 N. E. 657.

It is our opinion, therefore, that from a consideration of all the evidence the jury could have drawn an inference that the appellees, Alexander, Edwards and Perk, were effecting a sale of the assets of the Greencastle Water Works Company by the methods described, the proceeds of which sale they accepted and retained. If the jury trying the case found such to be the fact, then the law would impose upon such appellees an obligation to pay and discharge the claims and demands of corporate creditors, in the event no other provision had been made for their protection.

This brings us to a consideration of the liability assumed by the City of Greencastle, if any, for the payment and discharge of the obligations of the Greencastle Water Works Company. Here again there was some evidence from which the jury might have drawn

the inference that the individuals, representing the City of Greencastle in the negotiations by which the property was acquired, knew of the existence of the claim of the Public Service Commission in the amount of $2,421.10. This item appeared in the statement of assets and liabilities of the Greencastle Water Works Company furnished to the representatives of the City of Greencastle, from which schedule the cash balance of $13,600.00 may have been obtained. There was further evidence that in the bill of sale, which was executed by the intermediary, by which title to all personal assets of the Greencastle Water Works Company was conveyed to the City of Greencastle, it was expressly stipulated that the City of Greencastle was to assume the accrued federal income taxes, and the accrued state gross income taxes, and "the account of the Public Service Commission of Indiana in cause No. 11,925," which number was the method used by the Public Service Commission to designate the cause in which the costs of $2,421.10 had accrued.

The law recognizes the right of one corporation to enter into an agreement by which it assumes the liabilities of the predecessor corporation. In the absence of such an agreement, however, no liability for the debts of the selling corporation attaches. This rule has been announced in the following language:

"If one corporation purchases the assets of another and pays a fair consideration therefor, no liability for the debts of the selling corporation exists in the absence of fraud or agreement to assume the debts. The liability of a purchasing corporation is very similar to that of an individual. The corporation does not, merely by reason of the purchase, become liable for the debts of the selling corporation. There is no lien on the assets of a corporation in favor of creditors which will continue

against bona fide purchasers of such assets for a valuable consideration. The purchasing corporation is not bound to see that the consideration passing is applied to the payment of debts of the selling corporation. . . ." 13 Am. Jur. Corporations, § 1238, p. 1126.

If the jury should find that in truth and in fact the City of Greencastle did assume the debts of the Greencastle Water Works Company, as indicated in the schedule of assets and liabilities and in the bill of sale, which was offered in evidence, then the City of Greencastle would be liable for the item of $2,421.10. The City of Greencastle contends, however, that the $13,600.00 which it paid represented the actual value of the personal property purchased by it, and that the schedule of assets and liabilities was not the basis by which this sum was determined. The City of Greencastle further contends that the attorney and the agents representing the city in this purchase had no authority to assume the obligation of the Greencastle Water Works Company. If this is true, it is a matter of defense, which the city may establish in the trial of this case.

It is our opinion that the appellant's offered evidence was sufficient, however, to require the submission to a jury of the question as to whether or not the City of Greencastle did assume the obligation of $2,421.10 due the appellant.

There is no allegation in the complaint that the City of Greencastle assumed and promised to pay the item of $620.16, the costs incurred in the first hearing, and the court accordingly was not in error in sustaining the demurrer of the City of Greencastle to the first paragraph of complaint.

As to these costs set forth in the first paragraph of complaint, the appellees, Alexander, Edwards, and Perk, contend that the same were vacated when the order of the Public Service Commission, of which they were a part, was permanently enjoined by the federal court, as appears in the case of *Greencastle Water Works Co.* v. *Public Service Commission* (1929), 31 F. (2d) 600.

The statute under which the commission is authorized to assess the costs of an investigation upon a public utility reads in part as follows:

> "In its order upon any investigation, made under the provisions of this act, either upon complaint against any public utility, or upon the petition of any such public utility or upon the initiation of the commission, the commission shall ascertain and declare the expenses incurred by it upon such investigation, and the public utility affected thereby shall pay into the treasury of the state the amount of the expenses, so ascertained and declared, within a time to be fixed in the order, not exceeding twenty [20] days from the date thereof. . . ." § 54-425, Burns' 1933.

It is our opinion that the authority to tax costs in such investigations by the Public Service Commission is not conditional upon the validity of the order establishing rates; the purpose of the statute was to charge the costs and expenses of the Public Service Commission for investigations made for rate making purposes to the public utilities, whose properties were being investigated. Such investigation and the service incidental thereto are for the benefit of the corporation and the customers whom they serve. It seems only fair, therefore, that such utility should be required to meet the charges incidental to such investigation, rather than to impose the burden generally upon the taxpayers. See *Bronx Gas & Electric Co.* v. *Maltbie* (1935), 268 N. Y. 278, 197 N. E. 281; *Wisconsin Tel.*

*Co.* v. *Public Service Comm.* (1932), 206 Wis. 589, 240 N. W. 411.

It is our opinion that the charge of $620.16 fixed by the Public Service Commission, as a result of its investigation, in 1928, was a proper charge against the Greencastle Water Works Company, and this cost was not invalidated by the judgment of the federal court, which enjoined the enforcement of the rates established in the order. Since this was an obligation of the Greencastle Water Works Company, outstanding and unpaid at the time of the purchase of the assets of said company by the City of Greencastle, it is our opinion that this claim is in the same class as the claim for $2,421.10, set forth in the second paragraph of complaint, so far as the appellees, Alexander, Edwards, and Perk, are concerned.

The court accordingly committed no error in sustaining the demurrer to the second paragraph of answer of the appellees, Alexander, Edwards, and Perk. The court was in error, however, in instructing the jury to return a verdict for the appellees at the conclusion of the appellant's evidence. The appellant's motion for a new trial should have been sustained; and for this error the judgment of the trial court is reversed, with instructions to sustain appellant's motion for a new trial, and for further proceedings consistent with this opinion.

Judgment reversed.

Blessing, J., not participating.

NOTE.—Reported in 40 N. E. (2d) 388.