HOLTZ *v.* ELGIN, JOLIET & EASTERN RAILWAY COMPANY.

[No. 18,120. Filed April 12, 1951.]

*Robert H. Moore, J. Edwin Smith,* both of Gary; and *F. Edward Dumas,* of Fowler, for appellant.

*William S. Isham,* of Fowler; *Glen D. Peters; Peters & Highland* (of counsel), both of Hammond; *Harlan L. Hackbert;* and *Knapp, Cushing, Hershberger & Stevenson* (of counsel), both of Chicago, Illinois, for appellant.

WILTROUT, C. J.—This case had its origin in a truck-train railroad crossing accident in which appellant received personal injuries for which he sought to recover damages. At the conclusion of appellant's evidence a verdict was directed for appellee, and such action is questioned here.

In determining whether a peremptory instruction should be given, directing a verdict, the court must accept as true all facts which the evidence tends to prove and draw against the party requesting such instruction all inferences which the jury might reasonably draw. In case of conflicting evidence only that evidence most favorable to the party against whom the instruction is requested will be considered. *Kettner* v. *Jay* (1940), 107 Ind. App. 643, 26 N. E. 2d 546; *State ex rel. Thompson* v. *City of Greencastle* (1942), 111 Ind. App. 640, 40 N. E. 2d 388; *Hummel* v. *New York Cent. R. Co.* (1946), 117 Ind. App. 22, 66 N. E. 2d 901; *Indianapolis Railways* v. *Williams* (1945), 115 Ind. App. 383, 59 N. E. 2d 586; *Orey* v. *Mutual Life Insurance Co. of N. Y.* (1939), 215 Ind. 305, 19 N. E. 2d 547. "A peremptory instruction should be given only when the evidence is clearly insufficient to establish one or more of the facts essential to the plaintiff's right to a recovery." *Boston* v. *Chesapeake & O. Ry. Co.* (1945), 223 Ind. 425, 61 N. E. 2d 326. Where there is no evidence, whatever, to maintain an issue it is the duty of the court so to inform the jury. *Craig, Exrx.* v. *Citizens Trust Company* (1940), 217 Ind. 434, 26 N. E. 2d 1006.

We therefore must examine the facts and inferences therefrom most favorable to appellant.

The statement hereafter set forth of the evidence most favorable to appellant is based upon the recital of the evidence as set forth in appellant's brief. ██ Appellee admits that it "contains a fair narrative statement of the evidence," and makes no additions or corrections. It must therefore "be taken to be accurate and sufficient for a full understanding of the questions presented for decision." Rule 2-17. Appellant, in his reply brief, has attempted to set out evidence of additional facts. Such omissions may not be supplied by a reply brief. *Lyons* v. *Souder* (1914), 56 Ind. App. 443, 105 N. E. 511; *Modern Woodmen, etc.* v. *Ball* (1922), 77 Ind. App. 388, 131 N. E. 539; *Smith* v. *Gowan-Stobo's Estate* (1942), 112 Ind. App. 11, 41 N. E. 2d 630; *Waters* v. *Delagrange* (1915), 183 Ind. 497, 109 N. E. 758; *Interstate Public Service Co.* v. *Moore, Admx.* (1929), 88 Ind. App. 439, 161 N. E. 633.

In the words of the Supreme Court in *Macbeth Evans Glass Co.* v. *Jones* (1911), 176 Ind. 221, 95 N. E. 567:

> "No doubt, on proper showing, the Appellate Court would have granted appellant's petition to amend the brief. If this had been done, appellee would have had an opportunity to answer the matters set out by the amendment. Appellant chose to insert the new matter in his reply brief. Under the rules, appellee had no right to file another brief. The Appellate Court might, on application, have granted appellee the right, under such circumstances, to file an additional brief; but we do not believe such a burden should be placed on an appellee."

A paved public highway known as Route No. 52 runs in a more or less easterly and westerly direction, and at a point approximately four miles west of Troy,

Illinois, intersects appellee's right-of-way and tracks at right angles. The accident happened at this crossing.

There were two advertising signs west of the railroad and north of the road. There was a grove of trees 151 feet north of the north line of the highway and 105 feet west of the west line of the railroad right-of-way. Stationary crossing (crossbuck) signs were located at the crossing.

From a point approximately 200 feet west of the railroad track the highway sloped toward and across the railroad crossing. In the first 100 feet west of the tracks the road declined two and three-fourths inches. The decline during the second 100 feet was about two and one-fourth inches, and during the third 100 feet it declined one-half inch.

On February 17, 1941, at 11:45 A. M. appellant was operating a ton and a half Ford truck loaded with four and a half tons of coal, going east as he approached the crossing. His speed was approximately 20 miles per hour according to one witness and between 20 and 25 miles per hour according to another witness. He had driven across this crossing once before, that same morning, while it was still dark.

The weather was snowy and blustery, a condition not uncommon in the locality at that season, and the highway was covered with snow and ice. It was a dark, cloudy day.

Appellant testified: "I could not stop in less than 300 feet under the same conditions with the load I had. Ice is hard to stop on." Other witnesses testified that going 25 to 30 miles an hour it would take 200 to 300 feet to stop the truck on the ice.

At that time only two trains a day passed over this crossing, one going each way. Both were operated by the same locomotive and crew. Inasmuch as there were

no facilities for turning the locomotive around, the locomotive was operated backward going one way.

On this occasion the train was approaching the crossing from the north. The locomotive was proceeding south, but headed north and was pulling from 40 to 50 cars.

Appellant's truck was approximately 400 to 500 feet west of the crossing when first seen by a member of the train crew. At that time the forward end of the train was approximately 100 to 150 feet north of the crossing.

After the locomotive was across the crossing, or while on the crossing, the section man who was in the cab of the locomotive, told the engineer, "that that truck is not going to get stopped." The fireman looked back and testified that the truck was about 200 feet away, going from one side of the road to the other. The section man testified he didn't see the truck until they were in the center of the highway. It was then between 200 and 300 feet away and swaying and sliding. The engineer testified, "we were right at the crossing and the truck was coming. I looked back and saw the truck about 300 feet away." The engineer immediately put the train into emergency stop and stopped in about four car lengths.

The truck hit the north end of the third car from the locomotive, about 240 feet from the locomotive.

Appellant's version of the accident was as follows: "The surface of the road was icy. It required all of my attention to drive . . . I did not know where that crossing was nor did I know that there was a crossing there. My window was open about two inches. I was listening for sounds along the highway. I did not hear any train whistle nor did I see any train until I got right on top of it. I was between a hundred and a hundred and fifty feet when I first saw the train. I

tried to stop. I couldn't stop. I tried the brakes and threw my truck in low gear and tried to stop it that way and it kept going. My truck swung and skidded on the highway . . . I knew it was difficult to stop my car on the ice as it was that morning . . . I had very good brakes on my truck and very good tires. I did not have chains on my truck . . . When I came to the scene of the accident I was driving not over twenty miles an hour . . . I could see clearly for about a block, around 250 to 300 feet even though the snow was blowing. I was around 150 feet from the tracks when I first saw the train. I did not see any warning sign along the right-hand side of the road as I approached the intersection. I did not look to the right or left on that road because it was slippery. All my attention was focused directly ahead and on the road . . . I didn't know a train was coming and I didn't know that there was a track there. I could have stopped the car if there wasn't any ice . . . The first time I applied the brake was when I was about 150 feet from the crossing . . . If I had heard the whistle, I would have shifted down and got the truck under control and then I would have looked around on both sides . . . If I had seen that sign telling me that there was a railroad there, I would have got the truck under control. I did not see the sign. I had to have my mind on the road . . . I had to keep my eyes on the road. If I hadn't, I was a goner."

Inasmuch as this accident happened in Illinois, we must be guided by the substantive law of that state at the date of the accident in determining the respective rights and duties between the parties hereto, including the law as to proximate cause, negligence and contributory negligence. *Louisville & N. R. Co.* v. *Revlett* (1946), 224 Ind. 313, 321, 65 N. E. 2d 731; *Baltimore, etc. R. Co.* v. *Reed* (1902), 158 Ind. 25, 62 N. E. 488; *Morley* v. *C. C. C. & St. L. R. R. Co.*

(1935), 100 Ind. App. 515, 194 N. E. 806; Restatement, *Conflict of Laws,* § 383, p. 469. Indeed, appellant concedes that, "Proximate cause, negligence and contributory negligence, are all substantive law and the Illinois law on these apply."

Whether the questions of negligence and contributory negligence, under the evidence, were questions of law for the court or questions of fact for the jury, as well as other questions presented by appellant, we think not necessary to determine if the alleged wrongful conduct of appellee is not to be regarded as the proximate cause of appellant's injuries.

It appears to us that *Berg* v. *N. Y. C. R. R. Co.* (1945), 391 Ill. 52, 62 N. E. 2d 676, is decisive of this case. The question before the court there, as here, was whether there was any evidence which, when taken in its aspects most favorable to the plaintiff, proved or tended to prove plaintiff's cause of action. In that case one Graves was driving an automobile in which Berg was a passenger. Defendant's tracks intersected the road at right angles. Graves drove toward the crossing at a speed of 20 to 25 miles per hour. He was familiar with the crossing and looked for a train. There were buildings obstructing his view. He saw the train when he was 76 feet from the crossing. He applied his brakes and tried to turn the car. The brakes held but the wheels skidded on the ice. The car skidded to a point approximately 30 feet north of the main track and, in the words of Graves: "I knew I couldn't turn it or stop and I proceeded to gun the thing across the crossing and almost made it."

The court said: "Evidence was introduced which plaintiff claims tended to prove that certain weeds, buildings, a tree and the elevator foundation obstructed the view from Third street west, thereby making the crossing at that intersection extra-hazardous. The com-

plaint does not appear to have been drafted on that theory and on this appeal the principal controversy is as to whether any warning of the approach of the train was given by the ringing of a bell or the sounding of a whistle." The court concluded that there was evidence which, taken in its most favorable aspect for the plaintiff, tended to prove the negligence charged, as well as evidence tending to prove that Berg was free from contributory negligence. We quote at length the words of the Supreme Court of Illinois:

"The next question is as to whether defendant's wrongful act was the proximate cause of the injury . . . Ordinarily such question is one of fact for the jury, to be determined from a consideration of all the facts and attending circumstances . . . Defendant's motion for a directed verdict or judgment notwithstanding the verdict raises a question of law as to whether there is any evidence which fairly tends to support the verdict of the jury . . . but before such question may be resolved against a plaintiff's verdict, it must appear not only that the facts bearing on such question are not in dispute but that all reasonable men would draw the same inference from such undisputed facts . . . To make a wrongful act the proximate cause of an injury, it must be shown that the events which followed the wrongful act extended in an unbroken sequence from the wrong to the injury, and that the injury was the natural and probable consequence of the wrongful act. It must also appear that it was an injury which the wrongdoer, in the exercise of reasonable care, should have foreseen . . . If a new cause intervenes which breaks the sequence between the original wrongful act and the injury so that the cause of the injury is traceable only to the intervening act, the second wrongful act becomes the proximate cause, but it is sufficient to establish liability against the original wrong-doer if it appears that his wrongful act and other wrongful acts concur in causing the injury. (Seith v. Commonwealth Electric Co., 241 Ill. 252.) In the latter

case this court quoted with approval from Milwaukee & St. Paul Railroad Co. v. Kellog, 94 U. S. 469, as follows: "The question always is, was there an unbroken connection between the wrongful act and the injury,—a continuous operation? Did the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury?' . . .

"Grave's evidence describing his efforts to avoid the collision either by stopping the automobile or turning it from the street leaves no room to doubt that it was the ice on the roadway that rendered his efforts futile. There is no evidence which casts doubt upon the mechanical condition of the brakes or the sufficiency of Grave's effort to have stopped or turned the automobile had it not been for the ice. Thus the ice on the roadway became a superseding and intervening cause, and the injury of Berg was the culmination of the events produced by it. The sequence between defendant's wrongful act and Berg's injury was not continuous and unbroken. Since Graves and Berg saw the train when they were yet a distance where the automobile could have been stopped or turned from its course and the collision avoided had it not been for the ice, it is obvious that the two causes, that is, defendant's wrongful act and the condition of the street, were wholly unrelated in their operation. They were not concurrent, and there is no basis for an inference that the wrongful act created a condition which made the injury possible . . . The undisputed facts lead to the conclusion that the icy condition of the street was the proximate cause of the injury and not defendant's wrongful act. Under such circumstances there was no question of fact for the jury."

It is noted that the *Berg* case, *supra,* has been cited and followed in *Hart* v. *Wabash R. Co.* (C. C. A. 7th, 1949), 177 F. 2d 492, a case which arose out of a crossing accident at Huntington, Indiana.

Appellant attempts to avoid the impact of the *Berg* case by pointing out certain differences in the facts.

While it must be conceded that the facts in that case differ in some respects from the facts in this, the principles of law there laid down, in our opinion, are controlling. We therefore hold, as a matter of law, under the law of Illinois, that the icy condition of the pavement was the proximate cause of the collision, and appellant may not recover, even though there may have been negligence on the part of the appellee.

Judgment affirmed.

Achor, J., not participating.

NOTE.—Reported in 98 N. E. 2d 245.